Opinion
 

 CORRIGAN, J.
 

 Introduction
 

 May a trial court strike a witness’s live testimony under Evidence Code section 352
 
 [1]
 
 because the court concludes the witness is lying? No. Under all but the most limited circumstances, credibility of witnesses is a question of fact to be resolved by the jury. Here, the court invaded that province and exceeded the discretion granted under the code. Because the error was prejudicial, the judgment is reversed.
 

 
 *1002
 

 Background
 

 I.
 
 The Dispute
 

 This suit revolved around the acquisition of a business known as Dynatex. David Vorse
 
 [2]
 
 sued Lewis Sarasy, alleging various causes of action in tort and in contract stemming from Sarasy’s purchase of Dynatex.
 
 [3]
 
 The complaint alleged that Vorse, Sarasy, and nonparty Donald Schmidt formed a partnership for the purpose of engaging in various business enterprises. The three subsequently decided to acquire Dynatex, with each partner acquiring an ownership interest. When Sarasy alone acquired Dynatex, Vorse sued for damages flowing from Sarasy’s failure to acquire Dynatex on behalf of the partnership.
 

 Sarasy defended, arguing there was no agreement to jointly acquire Dynatex. Instead, Sarasy claimed the three men agreed only to broker Dynatex to a third party and to divide any resulting commissions. Sarasy presented evidence that they worked with a potential purchaser, Winfield Polytek, to raise funds for the acquisition. When the deal with Polytek failed, the three tried unsuccessfully to find other buyers. Ultimately, Sarasy purchased Dynatex with his own assets. The central issue at trial was whether Vorse, Sarasy, and Schmidt orally agreed to acquire and share in the equity of Dynatex.
 

 On December 31, 1991, after Vorse had filed suit but before trial, Schmidt signed a declaration faxed to him by Vorse’s attorneys. The declaration, filed in connection with a discovery dispute, supported Vorse’s interpretation of the partnership agreement: “David Vorse, Lewis Sarasy and I formed an oral partnership ... in 1989 to engage in certain business ventures. One of these ventures was the acquisition of a high-tech company by the name of Dynatex Corporation ... by the partnership. The partnership planned to form a corporation ... in order to acquire the assets of Dynatex. Pursuant to our oral agreement, the partners were to be the shareholders in [the corporation].” According to the declaration, the law firm of Miller, Starr & Regalia was retained to complete the purchase on the partnership’s behalf.
 

 Schmidt was deposed in late 1994, three years after he had signed the declaration. In marked contrast to that document, Schmidt claimed there had
 
 *1003
 
 been
 
 no
 
 partnership agreement to acquire the assets of Dynatex and that he never believed Miller, Starr & Regalia represented him with regard to any such acquisition. Schmidt failed to produce certain documents concerning the dispute. He asserted attorney-client privilege in response to questions about his alleged attempts to engage counsel to sue Sarasy independently or with Vorse.
 
 [4]
 

 At deposition, Schmidt acknowledged signing a declaration faxed to him by Vorse’s attorneys in December 1991. However, he claimed he had just moved to Florida, “things were very chaotic,” and “I don’t recall reading it . . . .” As to the body of the declaration, Schmidt claimed, “None of this verbiage is something I wrote or said. It’s language more akin to what David Vorse would write or say.”
 

 More importantly, Schmidt claimed the substance of the declaration “is not fact” and “is totally contrary, not just what I think it is now versus what I thought it was then, but to the facts as they really happened.” In a second declaration, signed the day after his deposition, Schmidt said: “Mr. Vorse suggested that I could prevent the [Sarasy/Dynatex] transaction from closing by claiming to be a Sarasy partner excluded from the deal, although the three of us had never had any agreement about our respective ownership interests, if any, in any acquiring entity.”
 

 Regarding Dynatex itself, Schmidt claimed in his deposition, “Yes, we were going to try to acquire the assets of Dynatex but it wasn’t necessarily the three of us. . . .” Asked whether he expected any compensation after Sarasy acquired Dynatex by himself, Schmidt replied: “. . . I felt it would have been very nice had Sarasy reimbursed me at least my expenses, which at that point were quite substantial, and something for my time and effort during those months when I was endeavoring to raise financing and, in fact, did raise an offer, period.”
 

 Finally, in a third declaration signed November 9, 1994, Schmidt explained that since December 1991 he had come to realize that “. . . Mr. Vorse had made substantial misrepresentations with regard to his role in the Dynatex transaction, had lied to me repeatedly over the years, had been abusing my friendship and trust, and was manipulating me with respect to whether or not Mr. Sarasy had done anything to warrant a lawsuit. ... In addition, Mr. Vorse has candidly acknowledged that he, Mr. Sarasy and I did not have a partnership with respect to the Dynatex matter, but that this ‘could be worked out’ with respect to a lawsuit.”
 

 
 *1004
 
 II.
 
 The Referee’s Report
 

 On December 27, 1994, a week before the scheduled trial date, a discovery referee issued a lengthy report to the trial court. The report concerned plaintiff’s motion to compel Schmidt to answer questions and produce documents being withheld on the ground of attorney-client privilege, and Schmidt’s motion for a protective order to limit the length of his deposition. In the motion to compel, plaintiff put Schmidt’s credibility at issue by arguing that the attorney-client privilege should not apply when “the perjury of a witness in a civil proceeding can only be revealed through the disclosure of an attorney-client communication.” Although the referee rejected this argument, the report included a finding that Schmidt, “has intentionally decided with conscious disregard for both his past statements to others besides David Vorse and for his 1991 declaration (filed with this Court in 1992) to now present a totally contradictory version of what occurred before and after this litigation was commenced. This has occurred in at least two forms; Schmidt’s November 4, 1994, declaration and his recent deposition testimony. I do not know which of Mr. Schmidt’s versions of the past is truthful, but I find, based on abundant evidence in the form of documentary evidence, as well as Schmidt’s own words, deeds, and convenient lapses of memory, that Mr. Schmidt is not a trustworthy witness.”
 
 [5]
 

 Relying primarily on the referee’s condemnation of Schmidt, plaintiff moved to exclude Schmidt as a trial witness but, at the same time, to introduce Schmidt’s 1991 declaration into evidence. The court denied the motion, expressly permitting Schmidt to testify.
 

 III.
 
 The Trial Testimony
 

 During plaintiff’s case-in-chief, with no objection from Sarasy, Schmidt’s 1991 declaration was admitted into evidence. The court instructed the jury: “A declaration under oath again is given under penalty of perjury. If it’s introduced into evidence, it’s as if the person testified to that.” The jury was shown an enlarged copy of the declaration while counsel read the text aloud. In cross-examining Sarasy, counsel suggested Sarasy had subsequently “prevailed upon” Schmidt to change his 1991 testimony only because Vorse had since died and could no longer defend his own position.
 

 Sarasy called Schmidt to testify for the defense. According to Schmidt, in April of 1989, he, Sarasy, and Vorse began to help Winfield Polytek raise
 
 *1005
 
 funds to purchase Dynatex. The three men orally agreed that, if Polytek completed the purchase, they would take their commission in stock, divided equally among themselves. Polytek withdrew in the summer of 1989, and the three agreed to look for another buyer. While they discussed different ideas about compensation for these efforts, they did not reach any formalized understanding on that point.
 

 In late 1989, after a deal with another potential purchaser failed, Sarasy, Schmidt, and Vorse discussed whether Sarasy himself would purchase Dynatex. The three discussed, but reached no agreement upon, their respective participation if Sarasy were to buy the company with his own assets. Schmidt understood he would not share in any commission if Sarasy made the purchase.
 

 Schmidt testified Vorse called him in March 1990 to report that “Sarasy had gone into contract for the acquisition of Dynatex . . . and that we needed to do something about it.” The court sustained an objection to any further questions on direct examination about what Vorse and Schmidt may have discussed about suing Sarasy.
 
 [6]
 

 Sarasy’s counsel turned to questioning Schmidt about the faxed 1991 declaration, exhibit 143. By December of 1991, Schmidt had “pretty much decided against” pursuing litigation against Sarasy, and his interest level in Vorse’s suit was “close to zero.” Nonetheless, when Vorse called in late December and said his attorney would be sending him a document to sign, Schmidt agreed. Schmidt admitted the handwriting and signature on the last page of the declaration were his, as was the fax strip at the top of the page. However, he did not recall whether he had received or seen the first two pages.
 

 Schmidt was asked whether the substance of the declaration was “consistent with your recollection of the transactions in which you were involved with the Dynatex Corporation.” The court sustained plaintiff’s objection that the “document speaks for itself. He’s trying to impeach his own witness.[
 
 7
 
 ] It’s a sworn statement by Mr. Schmidt.”
 

 Sarasy’s attorney then turned to exhibit 144, purportedly the later-filed original of the faxed declaration. Sarasy’s counsel had earlier indicated
 
 *1006
 
 Schmidt would testify that the original signature page of exhibit 144 was a forgery. Essentially, Schmidt intended to testify that the declaration faxed to him by Vorse’s counsel was different from exhibit 144, the purported original of the faxed declaration. This testimony would support an inference that counsel had fraudulently altered the preceding pages of the faxed declaration to induce Schmidt to sign the declaration, and then forged Schmidt’s signature on the later-filed original of the faxed declaration. Plaintiff’s attorney stated he had no objection to the document itself, but requested and was granted a section 402 hearing outside the presence of the jury as to the upcoming line of questioning.
 

 The court excused the jury and opined it was “offensive” for Sarasy’s counsel to suggest that the filed declaration had been altered.
 
 [8]
 
 The court pointed out that the direct effect of Schmidt’s testimony was to accuse opposing counsel of falsifying Schmidt’s declaration, an accusation that could force counsel to testify and possibly result in a mistrial at virtually the end of the case.
 
 [9]
 
 The court added that “without hearing more, I can only tell you so far I don’t believe Mr. Schmidt.” When Sarasy’s counsel made an offer of proof that Schmidt would testify that the verification on exhibit 144 was not his signature, the court responded: “You’re accusing these two people who could be disbarred, could be disbarred for filing false documents, for forging the documents. And I’m not going to allow that in front of this jury, I’m going to tell you that, unless you have strong evidence. And since I do not believe this witness, I’m not going to allow him to testify to that.” The court also precluded Schmidt from testifying that statements in his 1991 declaration were inconsistent with his recollection of the transaction, ruling that “he has not answered questions truthfully and either—and I’m going to strike his testimony.”
 

 At that point, Sarasy’s counsel offered to “move to another line of questioning that doesn’t involve Exhibit 144.” He intended to inquire about an alleged admission by Vorse, made in November 1991, that there was never a partnership agreement to buy Dynatex. Following further argument as to what, if any, of Schmidt’s testimony should be stricken, the court made its ruling: “I’ve never done this before ever. It’s extreme. Now, I’ve had people I didn’t believe on the stand, but I never had a situation in which the credibility and the ethics of lawyers, not the parties, you could impugn Mr. Vorse, his testimony from here to kingdom come, it would be perfectly
 
 *1007
 
 appropriate. [¶ But to imply so that the jury should infer that these two attorneys, who are not parties to this case but represent a party, forged documents, filed false documents is so prejudicial not only to them but to the plaintiff’s case that it requires comment and possibly a dismissal for misconduct on your part. I consider it misconduct. . . . [¶ . . . [¶ . . . [E]ven though I respect [the discovery referee], I didn’t want to take his word for the fact that Mr. Schmidt didn’t tell the truth. I wanted to hear this myself, and I didn’t—the impact of what you were doing with [exhibits] 143, 144 didn’t really come through earlier today when you were telling me about it, or I would have stopped you then. [*]D But it has come through now, and it is damaging to the plaintiff’s case, let alone—let alone to counsel's reputation. That’s not before the jury, but I think that I have to make some comment to the jury . . . .”
 

 IV.
 
 The Ruling
 

 When the jury was recalled, the trial court made the following statement. “Ladies and gentlemen, I have discharged the witness. I found that Mr. Schmidt’s testimony was not to be believed, and therefore I have stricken it. And I am going to instruct you not to consider anything to which he testified. Just a minute. Exhibit 143 is already in evidence. That remains in evidence. But as to what he testified to orally, all of it is to be stricken from your minds.” At the end of trial, the court instructed the jurors: “You are the sole and exclusive judges of the believability of the witnesses and the weight to be given the testimony of each witness.” However, it added: “In this case I did comment on the veracity of one witness, and that witness’ testimony was stricken. You are not to consider that witness in considering the evidence before you.”
 

 The jury found Vorse, Sarasy, and Schmidt had entered into a partnership to acquire the assets of Dynatex and found against Sarasy on all but one cause of action predicated on the alleged partnership agreement. Sarasy timely appealed.
 

 Discussion
 

 I.
 
 The Court Abused Its Discretion in Conclusively Assessing Schmidt’s Credibility
 

 This case compels consideration of how far a trial court may go in assessing the credibility of proffered testimony during a section 352 analysis without overstepping the jury’s role as fact finder. Here, the court found a witness untruthful and struck his testimony for that reason. Such action is not generally permitted.
 

 
 *1008
 
 It appears from the record that, in striking Schmidt’s testimony, the trial court relied on the discretion granted by section 352, which permits exclusion of evidence when its probative value is substantially outweighed by the likelihood that its admission will unduly consume time or create a substantial danger of unduly prejudicing, confusing, or misleading the jury. The trial court erred here, because it weighed the probative value of the evidence against an inaccurate standard of prejudice and because it misconstrued its role in the factfinding process.
 

 There is no dispute here that Schmidt’s testimony was relevant. There were only three people involved in the alleged partnership: Vorse, Sarasy, and Schmidt. The existence and nature of a partnership among the three were central issues in the case. Schmidt offered to testify about his understanding of the Dynatex negotiations and to recount the actions of the alleged partners. Such testimony clearly falls within section 210’s definition of relevant evidence as that “having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action.”
 

 The probative value of Schmidt’s testimony, if true, was also quite high. Schmidt, as the third party to the alleged agreement, could offer direct testimony pertaining to the existence of the partnership, an ultimate fact at issue. Sharply conflicting versions of the relevant events were presented by the parties. Thus, what Schmidt had to say, and his demeanor while saying it, were singularly important to the jury’s evaluation. It is against this high degree of probative value that the trial court was required to weigh the substantial danger of undue prejudice. The court failed, first, by applying an improper understanding of that latter concept.
 

 “Prejudice” as contemplated by section 352 is not so sweeping as to include any evidence the opponent finds inconvenient. Evidence is not prejudicial, as that term is used in a section 352 context, merely because it undermines the opponent’s position or shores up that of the proponent. The ability to do so is what makes evidence relevant. The code speaks in terms of
 
 undue
 
 prejudice. Unless the dangers of undue prejudice, confusion, or time consumption “ ‘substantially outweigh’ ” the probative value of relevant evidence, a section 352 objection should fail.
 
 (People
 
 v.
 
 Cudjo
 
 (1993) 6 Cal.4th 585, 609 [25 Cal.Rptr.2d 390, 863 P.2d 635].) “ ‘The “prejudice” referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. In applying section 352, “prejudicial” is not synonymous with “damaging.” ’ [Citation.]”
 
 (People
 
 v.
 
 Karis
 
 (1988) 46 Cal.3d 612, 638 [250 Cal.Rptr. 659, 758 P.2d 1189].)
 

 
 *1009
 
 The prejudice that section 352 “ ‘is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence.’ [Citations.] ‘Rather, the statute uses the word in its etymological sense of “prejudging” a person or cause on the basis of extraneous factors. [Citation.]’ [Citation.]”
 
 (People
 
 v.
 
 Zapien
 
 (1993) 4 Cal.4th 929, 958 [17 Cal.Rptr.2d 122, 846 P.2d 704].) In other words, evidence should be excluded as unduly prejudicial when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors’ emotional reaction. In such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose.
 

 Here, the court focused on the fact that the evidence hurt one party’s case. That is what opposing evidence is generally supposed to do. Further, the court expressed concern that the proffered testimony would impugn the reputation, thus inure to the prejudice, of plaintiff’s counsel. The good faith presentation of an assertive defense may legitimately require such a tactic. The court may not prevent a party from a robust attack on the credibility of the other side merely because counsel’s reputation might be impugned.
 

 Having misconstrued “prejudice,” the court went on to evaluate the testimony’s probative value and, in doing so, improperly invaded the jury’s role as fact finder. The court apparently concluded Schmidt’s testimony was of limited probative value because the court did not believe it. Such an analysis overlooks the essential differences between the roles of judge and jury. It is axiomatic that questions of credibility are exclusively within the province of the jury. (§312, subd. (b); see also Pen. Code, § 1127.) The court may not set itself up as a gatekeeper excluding otherwise competent and relevant evidence simply because the court finds it unbelievable.
 

 The Supreme Court has spoken often on this topic in the context of criminal trials. Third party culpability cases, in which the defense offers evidence that someone other than the defendant actually committed the offense, are analogous to the issue presented here. “We recognize that an inquiry into the admissibility of such evidence and the balancing required under section 352 will always turn on the facts of the case. Yet courts must weigh those facts carefully. They should avoid a hasty conclusion . . . that evidence of [the third party’s] guilt was ‘incredible.’ Such a determination is properly the province of the jury.”
 
 (People
 
 v.
 
 Hall
 
 (1986) 41 Cal.3d 826, 834 [226 Cal.Rptr. 112, 718 P.2d 99].)
 

 In
 
 People
 
 v.
 
 Alcala
 
 (1992) 4 Cal.4th 742, 755 [15 Cal.Rptr.2d 432, 842 P.2d 1192], the defendant was convicted of the kidnapping and murder of a
 
 *1010
 
 young girl. At trial, he sought to call Tim Fallen to testify he had seen the girl on the particular day. If believed, Fallen could have undercut the prosecution’s theory of when the girl was kidnapped, thus raising the possibility that someone other than the defendant had killed her. The prosecution moved to exclude Fallen’s testimony because he had also identified a photograph of a different little girl. “The trial court accepted the prosecution’s argument and excluded the testimony ... on the ground of relevancy and pursuant to Evidence Code section 352. Relying upon the language of that statute, the court stated that Fallen’s positive misidentification of the other girl destroyed whatever probative value his testimony might have had, and that allowing such testimony only would ‘confuse the issues.’ ”
 
 (Id.
 
 at p. 790.)
 

 The Supreme Court concluded the trial court’s action was error: “Although the court was vested with wide discretion in determining the relevance and weighing the prejudicial effect of proffered evidence against its probative value [citation], the circumstance that Fallen’s testimony readily was subject to impeachment did not afford the court a legitimate basis for excluding this evidence. Eyewitness testimony may be vulnerable to impeachment for numerous reasons, including the possible existence of prior, conflicting testimony; such vulnerability, however, does not render the evidence irrelevant or unduly prejudicial.”
 
 (People
 
 v.
 
 Alcala, supra,
 
 4 Cal.4th at p. 790.)
 

 Often a criminal defendant, seeking to suggest another might be guilty, must rely upon hearsay testimony from witnesses whose credibility is vulnerable. Our Supreme Court, however, has made it very clear that a trial court must proceed cautiously in excluding evidence when it questions the veracity of the
 
 testifying witness.
 
 In
 
 People
 
 v.
 
 Cudjo, supra,
 
 6 Cal.4th 585, the trial court excluded the testimony of John Lee Culver, who claimed the defendant’s brother, Gregory, had confessed to the murder. Gregory, having invoked his right against self-incrimination, was unavailable to testify.
 
 (Id.
 
 at pp. 604-606.) The statements attributed to Gregory by Culver were, however, clearly against Gregory’s penal interest. (§ 1230.) Consequently, Culver’s testimony, though hearsay, came within the exception. “It is true, as the People suggest, that the alleged statement was inconsistent to some extent with the physical evidence .... However, such discrepancies might be attributable to Gregory’s agitation or Culver’s misunderstanding of what he was told. They did not negate all possibility that if Gregory claimed to be the murderer, he was telling the truth. Hence, the court could properly have found that ‘a reasonable [person] in [Gregory’s] position would not have made the statement unless he believed it to be true.’ (Evid. Code, § 1230.) [1 But the trial court did not focus exclusively, or even primarily, on
 
 *1011
 
 whether Gregory’s
 
 hearsay statement
 
 might be false. Instead, the court apparently accepted the prosecution’s contention that
 
 Culver
 
 was probably a liar who should therefore be excluded as a
 
 live witness.
 
 In doing so, the court erred. [¶ The People argue that in considering the admissibility of evidence offered under the hearsay exception for declarations against interest, the trial court could properly consider the credibility of the in-court witness, Culver. We disagree. The credibility of the in-court witness is not a proper consideration in this context.”
 
 (Id.
 
 at pp. 607-608, italics and brackets in original.)
 

 The trial court’s ability to exclude hearsay testimony based upon an evaluation of the testifying witness’s credibility is limited to circumstances in which “the testimony is physically impossible or its falsity is apparent ‘without resorting to inferences or deductions.’ [Citations.] Except in these rare instances of
 
 demonstrable falsity,
 
 doubts about the credibility of the in-court witness should be left for the jury’s resolution; such doubts do not afford a ground for refusing to admit evidence under the hearsay exception for statements against penal interest. [Citations.]”
 
 (People
 
 v.
 
 Cudjo, supra,
 
 6 Cal.4th at pp. 608-609, italics added.)
 

 Similarly, in
 
 People
 
 v.
 
 Jackson
 
 (1991) 235 Cal.App.3d 1670 [1 Cal.Rptr.2d 778], Division Four of this district held it was error to exclude, under section 352, hearsay evidence of a third party’s culpability. “We know of no rule that excludes testimony on the ground that it could be a fabrication . . . . It is the duty of the trier of fact to assess credibility. ‘Objection, your honor, this could be perjury!’ has not yet made it into the Evidence Code.”
 
 (Jackson, supra,
 
 at p. 1679.)
 

 Plaintiff defends the court’s action by relying on
 
 People
 
 v.
 
 Blankenship
 
 (1985) 167 Cal.App.3d 840, 848-849 [213 Cal.Rptr. 666]
 
 (Blankenship),
 
 and
 
 People
 
 v.
 
 Love
 
 (1977) 75 Cal.App.3d 928, 939-940 [142 Cal.Rptr. 532]
 
 (Love).
 
 Before considering those two cases, we turn to
 
 People
 
 v.
 
 Chapman
 
 (1975) 50 Cal.App.3d 872 [123 Cal.Rptr. 862]
 
 (Chapman),
 
 upon which the courts in
 
 Blankenship
 
 and
 
 Love
 
 relied.
 

 In
 
 Chapman,
 
 the trial court excluded evidence of hearsay statements by a third party confessing to the crime. In making a preliminary factual determination as required by the hearsay exception for statements against penal interest (§§ 405, 1230), the trial court determined the hearsay statements were untrustworthy. The appellate court agreed: “The record here strongly suggests the existence of a plan by three fellow prisoners to have one person take the blame for another’s crime under circumstances where the one taking the blame could not suffer any real detriment to his own interests.”
 
 (Chapman, supra,
 
 50 Cal.App.3d at p. 880.) Because the trial court also relied
 
 *1012
 
 upon section 352, the appellate court addressed that section as well, concluding that the exclusion of evidence was proper: “Thus in applying Evidence Code section 352, the trial court in weighing ‘probative value’ necessarily considers, among other things, credibility of the witnesses who testify to the proffered evidence.”
 
 (Chapman, supra,
 
 at p. 881.) Not only was this statement unnecessary to the court’s resolution of the case, it was inaccurate and has since become the source of great mischief.
 

 In
 
 Love, supra,
 
 75 Cal.App.3d 928, the defendant sought to implicate a third party, Walton, for the crime. Walton was called as a witness and denied involvement. Thereafter, the defendant attempted to call two witnesses who would testify that Walton had confessed to them. The trial court denied this request under section 352, without specifying its reasoning.
 
 (Love, supra,
 
 at pp. 934-935.) The appellate court upheld that ruling, holding that an assessment of the
 
 testifying
 
 witness’s credibility is not only a preliminary fact determination when assessing the admissibility of a hearsay statement as a prior inconsistent statement (§ 1235) but is also necessary to assessing the probative value of the evidence in light of section 352.
 
 (Love, supra,
 
 at p. 939.) On this point, the
 
 Love
 
 court cited
 
 Chapman, supra,
 
 50 Cal.App.3d at page 881. However, the
 
 Love
 
 court went on to assess the credibility of not only the testifying witnesses but of the hearsay
 
 declarant,
 
 Walton, as well.
 
 (Love, supra,
 
 at pp. 940-941.)
 

 In
 
 Blankenship, supra,
 
 167 Cal.App.3d 840, the defendant was prevented from testifying that a third party, Hahn, had confessed to him. The appellate court affirmed: “. . . [N]othing in the offer of proof concerning defendant’s proposed testimony provided an internal indication of veracity. As the proposed testimony was to come from defendant himself it was highly suspect both because defendant had a motive to falsify and because accurate details concerning the crime could be explained by defendant’s own knowledge and guilt rather than Hahn’s. . . . The trial court’s finding that the proposed testimony [about the hearsay statement] lacked trustworthiness is reasonable in light of the evidence and the exclusion of the proposed testimony was not error.”
 
 (Id.
 
 at p. 849.)
 

 The reasoning of
 
 Chapman, Love,
 
 and
 
 Blankenship
 
 is contrary to the Supreme Court’s analyses in both
 
 People
 
 v.
 
 Alcala, supra, 4
 
 Cal.4th 742 and
 
 People
 
 v.
 
 Cudjo, supra,
 
 6 Cal.4th 585. We recognize that the majority in
 
 Cudjo
 
 mentioned
 
 Blankenship
 
 and
 
 Chapman.
 
 (6 Cal.4th at p. 610.) The court did not engage in a lengthy analysis of those cases, however, and did distinguish them factually. Rejecting the section 352 analysis of the courts in
 
 Chapman, Love,
 
 and
 
 Blankenship,
 
 we instead follow the Supreme Court’s more recent reasoning. A trial court may exclude the live testimony
 
 *1013
 
 of a witness whom the court disbelieves only in “rare instances of demonstrable falsity.” (See
 
 People
 
 v.
 
 Cudjo, supra,
 
 6 Cal.4th at p. 609.) The court may not exclude evidence when the court simply does not believe the testifying witness.
 
 (People
 
 v.
 
 Alcala, supra, 4
 
 Cal.4th at pp. 790-791.) By contrast, the trial court must assess the credibility of the hearsay
 
 declarant
 
 because that person is not under oath and subject to cross-examination before the jury.
 
 (Cudjo, supra,
 
 at p. 608.)
 

 Here, the court refused admission of Schmidt’s live testimony. The court then struck
 
 all
 
 of Schmidt’s previous testimony because the court did not believe him. There is no case law to support plaintiff’s contention that an assessment of Schmidt’s credibility was a proper component of the section 352 balancing test in this context. Schmidt may or may not have been lying. Such a decision, however, was for the jury to make.
 

 II.
 
 The Error Was Prejudicial
 

 The test for prejudice in such cases is well settled. “. . . [N]o judgment shall be reversed . . . unless it appears, upon examining the entire cause including the evidence, a miscarriage of justice has resulted. [Citations.] A miscarriage of justice should be declared only when the reviewing court is convinced after an examination of the entire case, including the evidence, that it is reasonably probable a result more favorable to the appellant would have been reached absent the error. [Citations.]”
 
 (In re Marriage of Smith
 
 (1978) 79 Cal.App.3d 725, 751 [145 Cal.Rptr. 205].)
 

 In arguing that Sarasy has not established prejudice, plaintiff details at some length evidence supporting Vorse’s version of the alleged partnership agreement. He is correct that there was substantial evidence the jury could have inteipreted in his favor. On the other hand, he cannot dispute that Schmidt was a unique and important witness on the pivotal issue. Indeed, his attorneys acknowledged, in two separate declarations submitted to the trial court, that Schmidt was a “key witness” in the action.
 

 Nor can plaintiff dispute the damage inflicted on Sarasy’s case when the court let Schmidt’s 1991 declaration stand unchallenged and unexplained. Shortly after the ruling, Schmidt’s wife testified that Vorse had encouraged her and her husband to join in his lawsuit against Sarasy. According to Mrs. Schmidt, Vorse admitted that, although there had never been a partnership between the three men to purchase Dynatex, Sarasy would be unable to prove it and they could expect a “real kill” from suing Miller, Starr & Regalia, Sarasy, and others. On cross-examination, plaintiff’s counsel called Mrs. Schmidt’s attention to an enlarged copy of exhibit 143, then repeatedly
 
 *1014
 
 asked Mrs. Schmidt whether she knew her husband had declared under penalty of perjury that he, Sarasy, and Vorse had formed a partnership to acquire Dynatex.
 

 Plaintiff’s closing arguments also highlighted the Schmidt declaration: “In 1991 Don Schmidt executed a declaration stating unequivocally he was a partner with Mr. Vorse and with Mr. Sarasy. This is in evidence.
 
 In fact, Mr. Schmidt’s declaration is the only evidence which you have been presented regarding Mr. Schmidt’s position in this case.
 
 Mr. Schmidt testified that there was a partnership, and that he was a partner with Mr. Vorse and Mr. Sarasy.” (Italics added.) In arguing the existence of a partnership, counsel again stressed that “Mr. Schmidt’s declaration, which we already had on the easel, states under oath that there was a partnership.” Again, in his rebuttal argument, plaintiff’s attorney either read from or paraphrased the 1991 declaration: “Mr. Schmidt testified in 1991 in his declaration, which I read to the jury, David Vorse, Lewis Sarasy formed an oral partnership by the name of LDD in 1989 to engage in certain business for the acquisition of [a] high tech company by the name of Dynatex Corporation by the partnership .... Mr. Schmidt testified there was a partnership.”
 

 Not only did the trial court exclude evidence of an important defense witness, it allowed to remain in evidence a statement that very witness was prepared to disavow. Despite the existence of countervailing evidence, the error was prejudicial.
 

 Plaintiff’s remaining contentions are not persuasive. He protests that, had the court not condemned Schmidt as a liar and jettisoned his testimony outright, it could have commented on Schmidt’s veracity as permitted by BAJI No. 15.21. Such permissible comment, however, would not have deprived the jurors of the opportunity to hear the pertinent testimony and make their own assessments of Schmidt’s credibility. (See BAJI No. 15.21 and com. (8th ed. 1994 bound vol.) pp. 364-365 [court must make clear that its comments on evidence are not binding, as jury is exclusive arbiter of questions of fact and witness credibility].) Here, the court’s action prevented the jury from discharging its role as fact finder.
 

 Last, plaintiff asserts Sarasy waived the error by not objecting when the declaration was originally admitted in evidence. We disagree. At the time the declaration was admitted, the court had expressly ruled Schmidt would be permitted to testify. The defense was prepared to have Schmidt attack Vorse’s credibility. Such a course involves a legitimate tactical choice. The failure of Sarasy’s counsel to object to admission of the declaration cannot be construed as a waiver of his right to challenge the court’s subsequent ruling.
 

 
 *1015
 
 Plaintiff’s point that Sarasy’s counsel should have asked the court to strike the declaration after its ruling on Schmidt’s testimony has more resonance but, ultimately, is not persuasive. First, the court made quite clear its belief that Schmidt had told the true story in the 1991 declaration and that this assessment was at the core of its decision to preclude his oral testimony as recent fabrication. In light of the court’s statements, Sarasy’s counsel could reasonably have believed a request to strike would have been futile. Moreover, as the jury had already been read and shown the declaration, an order from the court that it be stricken would, realistically, have had marginal utility.
 

 Because the error requires reversal, we do not reach the additional issues and arguments raised on appeal and cross-appeal.
 

 Disposition
 

 The judgment is reversed, and the matter remanded to the trial court. Sarasy is awarded costs on appeal.
 

 Phelan, P. J., and Walker, J., concurred.
 

 [1]
 

 Unless otherwise indicated, all statutory citations are to the Evidence Code.
 

 [2]
 

 Scott Vorse was substituted as party plaintiff after David Vorse died in 1993. Unless otherwise indicated, our references to “Vorse” are to David Vorse, while our references to “plaintiff’ are to Scott Vorse.
 

 [3]
 

 The first amended complaint also alleged various causes of action against attorneys of the law firm Miller, Starr & Regalia; Dynatex; Barrie Regan, the president and principal shareholder of Dynatex; James Fusco and Richard Corbett, business associates of Sarasy; and Does 1-100. Only the claims against appellant, Lewis Sarasy, are before this court on appeal.
 

 [4]
 

 Following contentious discovery proceedings, Schmidt was ultimately ordered to produce the documents and to answer many disputed questions.
 

 [5]
 

 The report ultimately recommended that plaintiff’s motion to compel be granted in part and denied in part, and that Schmidt’s motion for a protective order be denied. Over Sarasy’s objection, the court adopted the recommendations, findings, and conclusions of the referee and awarded sanctions against Schmidt in connection with the document production portion of the motion to compel.
 

 [6]
 

 The court explained the ruling by stating: “Seems to me on redirect after he goes, you can’t go into what happened after February 19th with Sarasy except regarding the declaration that was signed except how he happened to have signed this declaration. And then depending upon what he does in cross-examination, you might be able to bring that out on redirect.”
 

 [7]
 

 We note that California law does not prohibit a party’s impeachment of its own witness. (§785.)
 

 [8]
 

 When asked, Sarasy’s counsel confirmed Schmidt would testify he did not retain a copy of the declaration Vorse’s counsel faxed to him.
 

 [9]
 

 In this regard, the Supreme Court’s admonition should be borne in mind: “Evidence that is relevant to the prime theory of the defense cannot be excluded in wholesale fashion merely because the trial would be simpler without it.”
 
 (People
 
 v.
 
 McDonald
 
 (1984) 37 Cal.3d 351, 372 [208 Cal.Rptr. 236, 690 P.2d 709, 46 A.L.R.4th 1011].)