Filed 6/28/13 Renda v. Romero Gen. Construction CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MARIO RENDA,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>ROMERO GENERAL CONSTRUCTION CORP. et al.,<br><br>    Defendants and Respondents. | D061321<br><br><br>(Super. Ct. No. 37-2007-00075627-CU-NP-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Randa Trapp, Judge. Affirmed.

John J. Freni for Plaintiff and Appellant.

Stuart D. Hirsch for Defendants and Respondents.


Mario Renda sued Romero General Construction Corp. (Romero), Blue Rock Development, LLC (Blue Rock) and Desarrollos Roca Azul, S. de R.L. de C.V. (Roca Azul, collectively, the Romero Defendants) for conspiring with or aiding and abetting Ana Luisa Nevarez in committing fraudulent transfers to hinder, delay or defraud

Renda in his efforts to collect a judgment he secured against Nevarez in a prior action. A jury rejected Renda's claims against the Romero Defendants. Renda appeals, asserting the trial court committed reversible error by admitting or excluding certain evidence. We reject Renda's claims and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Renda does not challenge the sufficiency of the evidence supporting the verdict and the parties are well aware of the facts of this dispute. Accordingly, we merely summarize some of the facts presented to provide background for our later discussion.

A. The Prior Action

Renda entered into a joint venture agreement with Nevarez to develop a 2,640-hectare piece of real property that Nevarez owned in Tijuana, Mexico. That property included a mining operation, called Rancho Ontiveros. A dispute arose, resulting in Renda suing Nevarez, and Nevarez filing a cross-complaint (the prior action). In February 2004, Renda and Nevarez settled the prior action. The written settlement agreement required that Nevarez make monthly payments to Renda and a balloon payment in August 2006. After Nevarez failed to make the balloon payment, the trial judge in the prior action, the Honorable Joan M. Lewis, entered judgment in favor of Renda in the total amount of $817,429.55.

In the meantime, Keith Reilly, Romero's president and sole shareholder, learned of the mining operation on Rancho Ontiveros and concluded that entering into a mining agreement with the property owner, Nevarez, presented an excellent business opportunity. Blue Rock Development, Inc. was formed to enter into the mining

2

agreement with Nevarez. In 2003, Blue Rock Development, Inc. entered into the mining agreement with Nevarez through her company Loponti Holdings, Inc. Eventually, Blue Rock Development, Inc. became respondent Blue Rock. Reilly is Blue Rock's manager.

In October 2003, Reilly formed Roca Azul, a Mexican entity, to take advantage of NAFTA regulations. Blue Rock owns 99.9 percent of Roca Azul, and Romero owns .1 percent. Reilly is also the manager of Roca Azul. Roca Azul mined the material and exported it to the United States, and Blue Rock imported the material and sold it in the United States. Roca Azul and Blue Rock have no employees and no assets, and Blue Rock operates out of the same office as Romero in Escondido, California. Jordan Buswell, a Romero employee, ran Roca Azul's day-to-day operations.

Nevarez formed Grupo Loponti in 2006. Thereafter, Nevarez had Roca Azul start making payments under the mining agreement to Grupo Loponti. In May 2006, Roca Azul and Nevarez entered into a second mining agreement that replaced the first mining agreement and any prior agreements between the parties.

In August 2007, Judge Lewis denied Nevarez's motion to set aside the judgment in the prior action. Thereafter, Renda began his efforts to collect on his judgment against Nevarez. In February 2008, Judge Lewis granted Renda's motion to compel a third-party examination of Blue Rock through Bushwell. About this time, Renda began to discover details of the relationship between Nevarez and the Romero Defendants. In March 2008, Judge Lewis issued an order directing that Blue Rock pay

3

any monies owed by Blue Rock's Mexican subsidiary, Roca Azul, under the second mining agreement to Renda's counsel to be held in trust pending further order of the court.

In April 2008, Judge Lewis held a hearing to address Roca Azul's contention that the court lacked jurisdiction to issue a turnover order against it because it was a Mexican company (the April Hearing). The court, however, never addressed this matter because an issue arose as to whether Nevarez or the estate of her late father owned Rancho Ontiveros. The court held a further hearing in May (the May Hearing). Eventually, Nevarez admitted that she held possessory title in Rancho Ontiveros. In July 2009, Judge Lewis issued turnover orders against both Roca Azul and Nevarez that all payments in relation to the second mining agreement be delivered to Renda to be applied toward satisfaction of the outstanding judgment. However, Nevarez nor the Romero Defendants have made any payments to Renda.

B. The Instant Action

In September 2007, Renda filed this action against Nevarez and her multiple entities. Renda later added the Romero Defendants, Grupo Loponti and others. He alleged a single cause of action for fraudulent transfer in violation of Civil Code section 3439, et seq. against all defendants. Renda claimed that Nevarez wrongfully acted to hinder or defraud him in collecting his judgment by fraudulently transferring assets to other defendants and that the other defendants conspired with and aided and abetted Nevarez's wrongful conduct.

4

The matter proceeded to trial against Nevarez and the Romero Defendants. Renda filed a number of in limine motions, including motion number three which sought "to exclude claim that" the Romero Defendants' actions were sanctioned by the court. The trial court denied the motion. Motion number four sought "to exclude evidence of unrelated lawsuits" involving Renda. The trial court tentatively granted number four. After hearing oral argument, it allowed evidence of a "sanitized version" of a particular lien.

The jury rendered a verdict against Nevarez finding that she transferred monies to Loponti Holdings and Grupo Loponti with the intent to defraud Renda. The jury awarded Renda $450,000 in damages. The jury, however, found in favor of the Romero Defendants after concluding that they did not conspire with Nevarez or aid and abet her fraudulent transfer of property to Loponti Holdings and Grupo Loponti. The court entered a judgment in favor of the Romero Defendants and Renda timely appealed.

## DISCUSSION

### I. *In Limine Rulings*

A. General Legal Principles

On a motion in limine to exclude evidence, the trial court must weigh the probative value of the evidence against the likelihood that its admission will "necessitate undue consumption of time or . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352; undesignated statutory references are to this code.) We review rulings on motions in

5

limine for an abuse of discretion. (*Hernandez v. Paicius* (2003) 109 Cal.App.4th 452, 456.) A party challenging discretionary rulings on motions in limine must demonstrate the court's "'discretion was so abused that it resulted in a manifest miscarriage of justice.'" (*Ibid*.; § 354.) Moreover, even where evidence is improperly excluded, the error is not reversible unless "'it is reasonably probable a result more favorable to the appellant would have been reached absent the error. [Citations.]' [Citation.]" (*Vorse v. Sarasy* (1997) 53 Cal.App.4th 998, 1013.)

It is the appellant's burden to make an affirmative showing of error by an adequate record. (*Buckhart v. San Francisco Residential Rent Etc., Bd.* (1988) 197 Cal.App.3d 1032, 1036.) Because in limine rulings are by their nature tentative (*Tudor Ranches, Inc. v. State Comp. Ins. Fund* (1998) 65 Cal.App.4th 1422, 1430), such a ruling "made without fully knowing what the trial evidence would show, will not preserve the issue for appeal if the appellant could have, but did not, . . . [make an] offer of proof and press for a final ruling in the changed context of the trial evidence itself." (*People v. Holloway* (2004) 33 Cal.4th 96, 133; § 353, subd. (a).)

B. In Limine Number Three: State of Mind Evidence

1. Facts

In his third motion in limine, Renda asserted that the Romero Defendants intended to argue that their actions in this case were "sanctioned or supervised" by Judge Lewis during the judgment enforcement proceedings in the prior action. Renda argued that Judge Lewis did not sanction, approve or supervise the conduct of the Romero Defendants; accordingly, the Romero Defendants should be precluded from

making this argument. Renda argued that the evidence was irrelevant and prejudicial under sections 350 and 352. Within the motion, Renda noted that he conducted a third-party examination of Reilly and Buswell and that Judge Lewis issued a turnover order. Renda, however, did not contend this evidence needed to be excluded, nor did he specify any particular evidence that required exclusion. The trial court denied the motion. The court explained, "I believe the [Romero Defendants] should be able to make an argument as to their interpretation of what happened in previous court proceedings. So my tentative stands."

2. Analysis

Renda contends the trial court committed reversible error when it denied his third motion in limine and allowed the Romero Defendants to falsely contend that Judge Lewis supervised and approved of their conduct. He asserts that the trial court erred in allowing the introduction of certain comments made by the court at the April and May Hearings. Specifically, he notes that (1) during opening statement, counsel for the Romero Defendants discussed Judge Lewis's comments at the April and May hearings, (2) Buswell testified regarding his understanding of the court's April ruling regarding who owned the property, and (3) during closing argument, counsel for the Romero Defendants again referred to Judge Lewis's comments.

Renda did not object during the Romero Defendants' opening statement and closing argument. Thus, Renda forfeited any objection unless his motion in limine preserved the objection. (§ 353, subd. (a); *People v. Morris* (1991) 53 Cal.3d 152, 188–190 (*Morris*).) A motion in limine to exclude evidence is not a sufficient

7

objection unless it was directed to a particular, identifiable body of evidence and was made at a time when the trial court could determine the evidentiary question in its appropriate context. (*Morris*, *supra*, 53 Cal.3d at p. 190.) If a motion in limine fails to satisfy any of these requirements, a proper objection is required to preserve an evidentiary issue for appeal. (*Ibid*.) Here, Renda's motion in limine did not seek to exclude any specific portions of the reporter's transcript from the April and May Hearings. Thus, Renda's motion in limine did not preserve the issue for appeal.

Renda next complains that the trial court erroneously allowed Buswell to testify regarding exhibits 140 and 145, which were portions of the reporter's transcript from the April Hearing in front of Judge Lewis. As a threshold matter, Renda did not object to the admission of exhibits 140 and 145 at trial as being irrelevant or prejudicial. Thus, Renda forfeited these objections as his motion in limine failed to preserve the objection. (§ 353, subd. (a); *Morris*, *supra*, 53 Cal.3d at p. 188–190.)

Renda also complains that the trial court improperly overruled hearsay, lack of foundation and speculation objections to Buswell's testimony regarding exhibits 140 and 145. We examine each contention in turn.

Counsel for the Romero Defendants asked Buswell to read exhibit 140 and asked whether what transpired at the April Hearing affected his conduct. Renda, however, never objected to this testimony. Renda thus forfeited any objection on appeal. (§ 353, subd. (a).)

Counsel for the Romero Defendants next asked Buswell to look at exhibit 145; Renda objected on the ground of hearsay and "out of context." The trial court

overruled the objection, stating the witness could look at the document.  Thereafter, counsel for the Romero Defendants asked Buswell if he recalled the statement made by the court at this portion of the April Hearing and whether the comment had an impact on him.  Buswell testified to the impact the statement had on him without objection.  Counsel for the Romero Defendants then asked the trial court to take judicial notice of particular lines in the transcript.  The court took the request under submission.  We conclude the trial court properly overruled the hearsay objection to exhibit 145 because it was offered for some purpose other than to prove the truth of the matter asserted, i.e., what effect the statement had on Buswell.  (§ 1200, subd. (a).)  Moreover, to the extent the subject matter was taken out of context, this is something that could have been addressed during cross-examination.  In any event, the following day, Renda's counsel referred to exhibit 145 and moved to put the exhibit into evidence.  The trial court granted the unopposed request.

Finally, Renda complains about another portion of Buswell's testimony where Buswell testified to his understanding of what was going on at the April Hearing.  The trial court overruled Renda's hearsay, lack of foundation and speculation objections.  Again, the trial court properly overruled the hearsay objection because the testimony was offered for some purpose other than to prove the truth of the matter asserted.  As to the lack of foundation and speculation objections, Renda has not provided any argument on appeal explaining how the trial court erred in overruling these objections.  We deem these issues forfeited.  (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785.)

9

C.  Notice of Lien Evidence

1.  Facts

Renda's fourth in limine motion sought to exclude evidence of unrelated lawsuits involving him.  The trial court tentatively granted the motion, stating that the lawsuits were unrelated or had voided judgments; however, it wanted to hear argument as to how a lien served on the defendants had impacted them.  The Romero Defendants explained that around March 2008, they decided to stop paying Nevarez because of the court proceedings in the prior action.  Nevarez then threatened to close down the mining operation and lock up millions of dollars worth of the Romero Defendants' equipment.  While this was happening, the Romero Defendants claimed that they were served with a judgment lien in another action against Renda for $2.5 million.  The Romero Defendants argued that their knowledge of the judgment lien impacted their conduct, explaining that they understood the judgment lien against Renda meant that they should not pay him.  They asserted that the lien constituted a defense against Renda's claim that they had conspired with Nevarez to not pay him.

Renda argued the judgment lien had been improperly filed and was voluntarily withdrawn.  When the court questioned how the Romero Defendants knew about the withdrawal of the lien, Renda explained that the Romero Defendants' state-of-mind defense was illusory because their dilemma of who to pay could have been resolved by interpleading the funds.  The Romero Defendants then explained that because Roca Azul was a Mexican company, it was not subject to a turnover order in the prior

10

action. Nonetheless, it had the contractual obligation to pay Nevarez and that its knowledge of the lien impacted its conduct.

While the court considered the lien prejudicial, and was not "convinced" of the Romero Defendants' state-of-mind argument, it allowed "a sanitized version" of the lien stating that the jury could be told that the Romero Defendants were served with a notice of judgment against Renda in an unrelated case for an undisclosed amount.

During opening statements, the Romero Defendants briefly referred to a lien they had received against Renda. Buswell later testified that March 24, 2008 was a very significant day because Blue Rock was served with a "lien . . . stipulating that any monies that Blue Rock might pay to [Renda] needed to be paid to somebody else." Thereafter, the Romero Defendants asked that a copy of the lien be admitted into evidence after the parties agreed upon its form. The court took the request under submission. The reporter's index of exhibits received into evidence does not include the lien. Finally, the Romero Defendants briefly referred to their receipt of a lien during closing argument.

2. Analysis

Renda asserts the lien was irrelevant and inadmissible because (1) the proof of service for the lien shows that the Romero Defendants were never served with the lien, (2) the default judgment that was the basis for the lien was vacated, (3) the Romero Defendants' wrongful actions took place months and years before the lien was ever issued, and (4) even if the lien was valid, it did not provide a defense or excuse for the

11

Romero Defendants conspiring with or aiding and abetting Nevarez in committing fraudulent transfers.

On this record, we cannot conclude that Buswell's testimony regarding the Romero Defendants' knowledge of the lien and understanding that monies needed to be paid elsewhere was unduly prejudicial to Renda. Buswell's testimony regarding the lien was very brief and counsel merely mentioned the existence of the lien in passing during closing argument. Moreover, the trial court did not allow the lien to be placed into evidence and the jury never learned about the amount of the lien. Assuming without deciding that evidence of the existence of the lien was irrelevant, on this record, we cannot conclude that Buswell's brief testimony resulted in a miscarriage of justice. Absent a showing of prejudicial error, we cannot set aside the judgment.

## II. *Preclusion of "Smell Test" Comment*

### A. Facts

At the April Hearing, an issue arose as to who owned the property that contained the mining operation. Counsel for Nevarez suggested to Judge Lewis that the matter be continued so that he could provide translations of Spanish documents regarding this issue. The court noted that Nevarez had done nothing to pay her debt and it expressed concern that Nevarez was "thumbing her nose at the California judicial system." After Nevarez's counsel indicated it would get the court certified translations of the documents, the court replied:

> "I want evidence. I want competent evidence who owns this
> piece of property. I want competent evidence as to the checks
> and the monies that have been paid, where that money is

12

going. I know that there was a change in the direction of the check writing by everyone's own admission when Mr. Hirsch's client got thrown in this judgment debtor's exam and all of a sudden the payments went through some other source. It does have a concern and it doesn't pass the smell test, Mr. Bebi."

At trial, Renda requested that the above portion of the April Hearing be admitted into evidence because the Romero Defendants had taken the position that Judge Lewis supervised and approved their actions in the underlying case. The court denied the request as unduly prejudicial.

B. Analysis

Renda asserts the trial court erred in excluding this portion of the April Hearing as unduly prejudicial. We disagree.

A trial court may, in its discretion, exclude evidence if its probative value is substantially outweighed by the probability that its admission will create a substantial danger of undue prejudice. (§ 352.) The court's exercise of its discretion under section 352 will not be reversed on appeal absent a showing that the exercise of discretion was arbitrary, capricious or patently absurd, resulting in a manifest miscarriage of justice. (*Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1685.)

As a preliminary matter, looking at the comment in context, it appears that Judge Lewis made the "smell test" comment regarding Nevarez's actions in not paying her debt to Renda and not providing evidence regarding who owned the property. Assuming without deciding that the comment was directed at the conduct of the Romero Defendants, Renda has failed to explain how excluding this comment was

13

arbitrary, capricious or patently absurd, nor has he explained how the exclusion of this comment resulted in a manifest miscarriage of justice. While Renda appears to claim that the Romero Defendants defended this action by asserting Judge Lewis sanctioned or approved their conduct, our review of closing argument does not support this assertion. Rather, the Romero Defendants argued to the jury that they had no relationship with Renda, did nothing to conspire with Nevarez or aid and abet her conduct.

## DISPOSITION

The judgment is affirmed. Respondent is entitled to recover its costs on appeal.


McINTYRE, Acting P. J.

WE CONCUR:

O'ROURKE, J.

AARON, J.

14