Filed 5/17/21  P. v. Sims CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>DASHAUN LEMAR SIMS,<br><br>     Defendant and Appellant. | F078792<br><br>(Super. Ct. No. MF013030A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Marcos R. Camacho, Judge.

Michelle T. Livecchi-Raufi, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Catherine Tennant Nieto, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

After an altercation in a market, defendant Dashaun Lemar Sims was convicted by jury of making criminal threats against Becki L. in violation of Penal Code section 422 (count 1)[1] and of misdemeanor simple battery against Tamra P. in violation of section 243, subdivision (a) (count 4). The jury was unable to reach a verdict on counts 2 and 3, which alleged defendant made criminal threats against Sandra B. and Tamra, respectively, in violation of section 422; a mistrial was declared on those counts, and they were later dismissed. In a bifurcated proceeding, the trial court found true the allegation of a strike prior within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)). Defendant was sentenced to double the two-year middle term on count 1 (four years total) (§§ 18, subd. (a), 422, subd. (a), 667, subd. (e)(1)), and to one year of jail for violation of section 243, subdivision (a), on count 4 to run concurrent to the sentence on count 1 (§§ 18, subd. (a), 422, subd. (a), 667, subd. (e)(1)). The court imposed a $300 restitution fee under section 1202.4, subdivision (b), a $40 court operations assessment fee under section 1465.8, and a $30 court facilities fee pursuant to Government Code section 70373.

Defendant argues the trial court erred by permitting sheriff's deputies to testify about what Becki, Tamra, Sandra and Brittany S. told them during the deputies' investigation. Defendant maintains the error not only violated state law, it also rendered his trial fundamentally unfair and violated his due process rights. Defendant further contends Becki's cell phone video recording of the store's surveillance video of the incident was admitted in violation of Evidence Code section 356 (rule of completeness) and that it was unduly prejudicial under Evidence Code section 352. Defendant maintains the trial court abused its discretion by refusing to reduce count 1 to a misdemeanor, and the trial court failed to obtain a valid waiver of a jury trial regarding

---

[1]     All further statutory references are to the Penal Code unless indicated otherwise.

defendant's prior conviction. Additionally, defendant argues the court failed to conduct an ability-to-pay hearing as to the fines and fees, which should be stayed or stricken pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). Finally, in a supplemental brief, defendant argues there is no substantial evidence to support the trial court's finding his prior conviction constituted a strike and the one-year sentence imposed for the misdemeanor battery conviction is unauthorized.

The People did not respond to the arguments made in defendant's supplemental brief. As to all arguments made in defendant's opening brief, the People dispute defendant is entitled to any relief.

We conclude the trial court's prior strike finding was not supported by substantial evidence. We reverse the trial court's determination on the prior strike and remand for further proceedings. We also conclude the one-year jail term imposed for the misdemeanor battery conviction under section 243, subdivision (a), is unauthorized because the maximum sentence to be imposed under the statute is a six-month jail term and/or a $2,000 fine. (§ 243, subd. (a).) As the case must be remanded for further proceedings regarding the prior conviction and resentencing will be required, defendant's argument regarding *Duenas* is moot and we do not address it. In all other respects, the judgment is affirmed.

## FACTUAL SUMMARY

### I. Factual Background

On July 4, 2018, defendant came into the Family Dollar store in Boron, California, two different times. His first trip to the store occurred before noon. He was not allowed to return an item, and he became angry and left. He returned about an hour later and was asked to leave by the store manager. Defendant became angry and began yelling at the store manager, threatening to kill her and "shoot up" the store. In his attempt to reach or hit the store manager, defendant bumped into or pushed another customer. Defendant's

3.

brother, Za'un Sims,[2] came into the store and physically pulled defendant out. After he left, the front door to the store was locked and the store manager, a cashier, and two customers waited for law enforcement to respond to the 911 call that had been placed.

Two deputies responded to the store, interviewed the witnesses and reviewed the store's surveillance video of the incident. Defendant was identified and later charged with four offenses: making criminal threats against the store manager, Becki L. (§ 422, count 1); making criminal threats against a store cashier, Sandra B. (§ 422, count 2); making criminal threats against a customer, Tamra P. (§ 422, count 3); and misdemeanor battery against Tamra P. (§ 243, subd. (a), count 4). A trial was held in November 2018.

## II.    Trial Testimony

Becki L., a store manager working that day, testified she regularly sees defendant in the store—usually daily. That morning, defendant had been in the store to return an item but Becki refused to do so without a receipt. According to Becki, defendant became upset and then walked out of the store with an unpaid item. When she confronted him about that item, he started "screaming" at her and she decided not to pursue the issue. He left the store, but returned later that morning. Becki had been instructed to tell defendant he was no longer welcome in the store. When Becki approached defendant and told him this, he started screaming that he had not done anything; Becki began backing up toward the cash registers. Defendant continued yelling and screaming at Becki and, although she could not remember his exact words, she testified defendant was saying that he was going to hurt her, he was going to come back and kill her, and he knew her face and her name and who she is. He said he was going to get a gun and "shoot up" the store.

Once Becki reached the front of the store by the cash registers, defendant stood at the front door and called to his brother who was in their car in the parking lot. Becki

---

[2]    Because defendant and Za'un share the same last name, Za'un will be referred to by his first name.

4.

tried to get behind a register counter to put space between her and defendant; defendant tried to follow her. Another customer, Tamra P., stepped between them and attempted to stop defendant; defendant took a swing at Becki and ended up pushing Tamra. Za'un was trying to pull defendant out of the store, which he eventually succeeded in doing. Becki was scared defendant was going to get a gun and come back so as soon as he left they locked the doors. Becki had all the customers except Tamra and Brittany leave. It took the sheriff's deputies two and one-half hours to respond. When law enforcement arrived, they asked Becki for the store's video surveillance, so she took them to the office to view it. During Becki's trial testimony, the store surveillance video was introduced and played for the jury.

Sandra, a cashier working that day, testified defendant had come in earlier in the morning and asked to return an item. Sandra was unable to process the return without a manager, so she called Becki over. Becki told defendant she could not process the return for him, and defendant was very angry when he left the store. About an hour later he came back to the store, and Sandra notified Becki that he was back. Becki told defendant he had to leave because he had been "mean" earlier. Defendant became irate, started throwing his hands around and getting louder. Defendant and Becki were standing over by the coolers, and while Sandra could not hear their conversation, she saw Becki start backing up and heard Becki telling defendant that he had to leave the store. Sandra could hear defendant talking loudly, but she could not hear what he was saying. Becki kept backing up and then told Sandra to call 911. Sandra telephoned 911 and watched defendant become more and more angry, talking louder, and flaring his arms. Sandra became more and more concerned. Then defendant called for someone else to come in from the outside, and another man joined defendant—the second man tried to get defendant to leave. Defendant said something about bringing back a gun and that he was going to get his gun and come back and shoot. The other man continued to pull defendant out of the store while defendant resisted.

5.

Tamra testified she was at the store that morning shopping with her daughter, Brittany. She saw defendant following Becki and heard him saying he did not have to leave, that he had not done anything wrong, and that Becki could not make him leave. Becki continued to back up and defendant followed. Tamra decided to position herself between defendant and Becki because Tamra felt defendant was coming at Becki very aggressively. As defendant was gesticulating with his arms, Becki went behind a counter, and then defendant hit Tamra while trying to get to Becki. Another man had come into the store and tried to drag defendant out. Defendant was yelling that he would be back, that he was going to get Becki, he knew her face and he would be back to shoot up the store. The other man removed defendant from the store in a bear hug. Tamra heard a car squeal away, and they locked the doors to the store.

On cross-examination, Tamra denied following defendant to the door while he was being dragged out by his brother. She said she went to the door because her daughter was standing outside. The video was shown by defendant's counsel during the cross examination, and Tamra identified herself, Becki, defendant and Za'un. Tamra explained defendant never hit her with a closed fist, he bumped into her.

Brittany testified she was at the store that day, and she noticed defendant yelling. He was being loud and was trying to get to Becki, the store manager, whom Brittany has known for five or six years. Defendant began yelling really loudly at Becki and threatening her and then tried to go after Becki, which is when Tamra stepped between them: defendant was trying to get by Brittany and Tamra at the checkout, and Tamra stepped in his way. Brittany saw defendant trying to swing at Becki, and Tamra told Brittany to leave the store and take a small child in the store with her. On her way outside, Brittany saw another man grab defendant and pull him out of the store. She heard defendant saying he was going to come back and shoot up the store, a threat Brittany took seriously. After defendant had been pulled out of the store, Brittany went back into the store for Tamra. Sandra had been on the phone with 911 the entire time.

6.

On cross-examination, Brittany confirmed she had told deputies defendant had threatened to kill Becki and shoot up the store. When defendant pushed Tamra, Brittany told him not to touch her mother, but Brittany did not try to grab him; she tried to get her mother away from him. Defense counsel showed the video to the jury again during Sheridan's testimony and she identified herself and her mother in the video.

As described in more detail below, the investigating deputies James Perry and Daniel Rickard testified about what they observed when they arrived at the store, what the witnesses told them, and what portions of the store's surveillance video they reviewed. Perry also testified when he was dispatched that day, and how long it generally takes him to drive from Mojave, where he was when dispatched, to Boron.

Za'un testified about the altercation on defendant's behalf. Za'un had stayed outside in the car while defendant went into the store—he could see the store from his location in the car. Within 30 seconds, defendant gestured to Za'un to come into the store. When Za'un arrived inside, he saw that defendant was upset and there was an argument over something. Defendant was being verbally attacked by two store clerks and another aggressive female. Za'un told defendant it was not worth arguing over and he tried to grab defendant's hands to calm him down. He never saw defendant hit anyone or make any threats. One woman in the store told defendant to "'get the f--- out of here,'" and a clerk was saying profane and racially disparaging things. According to Za'un, there had been problems with racism by store employees in the past. Defendant and Za'un ultimately left the store and went back to their mother's house where they stayed the remainder of the day.

## III. Verdict and Sentencing

The jury was unable to reach a verdict on counts 2 and 3, and a mistrial was declared as to those counts. The jury returned a guilty verdict on count 1 for making criminal threats against Becki in violation of section 422 and a guilty verdict on count 4 for misdemeanor battery against Tamra in violation of section 243, subdivision (a). In a

bifurcated proceeding, the trial court determined defendant's prior conviction under section 243, subdivision (d), was a strike within the meaning of the Three Strikes law.

At sentencing, defendant made a motion for the court to reduce the conviction under section 422 to a misdemeanor, which the court declined to do. Defendant was sentenced to the midterm of two years (§§ 422, subd. (a), 18, subd. (a)) doubled to four years for the strike prior (§ 667, subd. (e)(1)), and the court imposed a one-year jail sentence on count 4 to be served concurrently with the sentence imposed on count 1. This appeal followed.

## DISCUSSION

### I. Admission of Witnesses' Out-of-court Statements

Defendant argues the two responding deputies were erroneously permitted to testify about what Becki, Tamra, Sandra and Brittany told them had happened at the store. Defendant maintains these out-of-court statements repeated by the deputies at trial constituted inadmissible hearsay, which violated state law and, beyond that, rendered the trial fundamentally unfair such that it constituted a federal due process error. Defendant contends no error of state law can be deemed harmless under *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*) nor can any federal constitutional error be deemed harmless under *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*). Finally, defendant argues the out-of-court statements were irrelevant, and to the extent defendant's counsel forfeited the argument on appeal by failing to make an objection on that ground, the omission was ineffective assistance of counsel.

The People do not claim the statements were admissible, but maintain the officers' testimony about what the witnesses told them was cumulative of the witnesses' live testimony in court and, thus, no prejudice accrued. Further, the People argue, because admission of these out-of-court statements was harmless, defense counsel's failure to object as to relevance was likewise harmless and does not constitute ineffective assistance of counsel.

8.

## A.    Background

Over a hearsay objection by defense counsel, Deputy Rickard testified what Becki told him when he questioned her after the incident.

"[Prosecutor:]  Did you then talk to [Becki] to find out what was going on?

"[Rickard:]  Yes.

"[Prosecutor:]  Briefly, what did [Becki] tell you?

"[Rickard:]  She told me a male that was later identified as [defendant] came into the store.

"[Defense Counsel]:  Objection.  Hearsay.

"THE COURT:  It appears to be hearsay.

"[Prosecutor]:  It's for the state of mind and for his follow-up investigation.

"[Defense Counsel]:  Can the Court admonish the jury this is not admitted for the truth[?]

"THE COURT:  That's what I was going to do.  [¶]  Ladies and gentlemen, there's an exception to the hearsay rule.  Hearsay basically is this:  Any out-of-court statement being offered for the truth.  In this case, it will be the statement that this witness would make as to what [Becki] said but that is not being offered for the truth.  [¶]  It's not being offered to prove the truth of those statements, just simply as to the effects those statements had on this officer and what he did after those statements were made to him.  So you're not to consider those statements for the truth of the matter asserted.  [¶]  You may proceed.

"[Prosecutor]:  [¶] … She told you a gentleman came into the store?

"[Rickard:]  Yes.

"[Prosecutor:]  What else?

"[Rickard]:  She said that the gentleman was not allowed in the store because he's previously stolen.  She told him to leave.

"[Defense Counsel]:  Same objection.

9.

"THE COURT:  That the admonishment I gave you previously applies to the same—that any of the statements the officer is making regarding [Becki].

"[Prosecutor:]  [¶] … You may continue.

"[Rickard:]  After she had told the subject to leave, he started acting crazy and yelling at her.  She said she became frightened for herself and went behind the counter to give herself a small barrier between herself and the subject.

"[Prosecutor:]  Why did she tell you she was frightened?

"[Rickard:]  Why?

"[Prosecutor:]  Yes.

"[Rickard:]  I believe because he was acting erratic and yelling and later made a statement he would kill her and come back with a gun.

"[Prosecutor:]  As she was telling you this, what was her reaction as she's telling you what she's experienced?

"[Rickard:]  She was scared.  Her hands were shaky.  She was having a difficult time talking about the incident.  [¶] … [¶]

"[Prosecutor:]  Did she tell you who the person was that came into the store?  Yes or no?

"[Rickard:]  No, I don't believe she's the one that told me.

"[Prosecutor:]  So she tells you the person comes in and there's some commotion.  What did she tell you they did after the person left the store?

"[Rickard:]  She said she was in fear for her life and the customers inside the store so she locked the doors to the business and waited for law enforcement to arrive."

Rickard also testified about what Sandra told him during questioning.  Overruling the same hearsay objection, the court again instructed the jury that any statements made by Sandra to Rickard were offered as an exception to the hearsay rule and instructed the

jury to consider Sandra's statements only for the effect it had on the deputy.[3]  Rickard testified Sandra told him she had heard Becki tell the suspect to leave the store and then the suspect began "flipping out" and yelling.  Sandra told Rickard she had called 911 and she had been so scared she could hardly move.

Deputy Perry testified about what Tamra told him about the incident.  Again, overruling a hearsay objection, the court instructed the jury any statements made by Tamra to the deputy were offered as an exception to the hearsay rule, so the statements were not to be considered for the truth but for the deputy's state of mind and what he did.  Perry testified Tamra had been a customer in the store at the time of the altercation.  She told him a Black male had an argument with the store manager (Becki), chased Becki in the store, and Tamra attempted to get between the two.  Tamra was then hit or bumped by the male and she attempted to get away from him.  She heard him say he was going to kill the manager and return to the store and "shoot up the front" of the store.  She told Perry she then saw another Black male come into the store and attempt to restrain the first man.  The first male continued to pursue the manager and yell that he would return.  Tamra told Perry her hip was sore from getting hit.

Perry also interviewed Brittany that day and testified about what she told him.  Defense counsel again interposed a hearsay objection, and the court instructed the jury that Brittany's statements to Perry could be considered only to show what Perry did as a result of those statements, not for the truth of the matter stated.  Perry testified Brittany told him a Black male had charged the store manager before Tamra stepped in to help, and the man pushed or struck Tamra while trying to get to Becki.  Brittany told Perry the man threatened to kill the store manager.

---

**3**     The prosecutor argued the statements were admissible as out-of-court statements not offered for the truth of the matter stated but for the state of the deputy's mind as relevant to his follow-up investigation.

11.

**B.      Analysis**

Under the hearsay rule, an out-of-court statement is generally inadmissible when the statement "is offered to prove the truth of the matter stated."  (Evid. Code, § 1200, subds. (a) & (b).)  The hearsay rule does not preclude admission of statements that are not offered for their truth, such as when offered for the nonhearsay purpose of the effect on the person who heard the statement.  (*People v. Montes* (2014) 58 Cal.4th 809, 863.)  The trial court admitted the witnesses' out-of-court statements for their effect on the listener (the deputies).  We dispense with an analysis of whether that ruling was an abuse of discretion because, even assuming it was, the assumed error was not one of constitutional dimension and any error of state law was harmless.

**1.      No Error of Constitutional Magnitude**

Assuming the out-of-court statements were admitted in error, the trial was not rendered fundamentally unfair as a result and no due process violation occurred.  (See *Estelle v. McGuire* (1991) 502 U.S. 62, 70; *People v. Partida* (2005) 37 Cal.4th 428, 439 ["[T]he admission of evidence, even if erroneous under state law, results in a due process violation only if it makes the trial *fundamentally unfair*."].)  The out-of-court statements were cumulative of the evidence properly before the jury.  The witnesses' statements the deputies relayed to the jury did not differ from the live testimony those same witnesses gave at trial, and their testimony was subject to cross-examination.

Defendant argues it was inherently prejudicial for those statements to be repeated by law enforcement officers whose testimony is more likely to be credited by the jury.  However, the court instructed the jury that all the witness statements relayed by Perry and Rickard were not to be assessed or accepted for truth and could be considered only for the impact they had on the subsequent conduct of the officer.  We presume the jury followed the court's instructions, even to the extent the effect of the statements on Perry's and Rickard's investigation was ultimately not relevant.  (*People v. Covarrubias* (2016) 1 Cal. 5th 838, 887.)

12.

Beyond that, this was not a case with only a single, interested witness and no corroborating evidence—the case did not rise and fall on the shoulders of one witness's credibility. The four percipient witnesses testified very consistently about what defendant said and did at the store that day. There was video, although no audio, of a portion of the events that could be reasonably interpreted as corroborative of the witnesses' testimony in salient respects. The jury also knew the witnesses' out-of-court statements were not the *deputies'* observations of what happened, nor did the deputies impermissibly vouch for the credibility of the witnesses' statements. In fact, on cross-examination Perry conceded that witnesses sometimes embellish their stories when reporting events to law enforcement. Moreover, none of the out-of-court statements were emphasized or even mentioned during the prosecution's closing arguments.

Defendant argues the officers' testimony unfairly prejudiced the jury against him because they repeated inflammatory statements that defendant threatened to kill the store manager and return to shoot up the front of the store, and that a witness was in fear for her life. Defendant contends it was likely the jurors unfairly placed significant weight on these statements just because they were repeated by law enforcement.

The out-of-court statements were not worded in materially different ways than those used by the witnesses themselves on the stand. In fact, the out-of-court statements were worded almost exactly the same as the witnesses' trial testimony. On the stand, Sandra characterized defendant as becoming "irate" and "throwing his hands around getting louder and louder" when Becki told him to leave; Becki, Tamra and Brittany all described defendant as "yelling" at Becki; and Becki, Tamra and Brittany uniformly testified defendant threatened to come back and "shoot up the store," while Sandra testified he threatened to "come back and shoot." Brittany testified defendant threatened to "kill" Becki, and she confirmed on cross-examination that she had told deputies that he had done so; Becki too described defendant as saying he was going to "kill" her and that she was terrified he was going to come back with a gun. The out-of-court statements

13.

used words similar if not identical to the witnesses' trial testimony and did not expand beyond the witnesses' trial testimony or provide any different or additional information critical to proving the charges.

In sum, the jury was instructed not to accept the deputies' testimony about witnesses' statements for their truth, and we presume the jury followed that instruction. The witnesses themselves testified using almost the same words and expressions as the out-of-court statements, and the out-of-court statements did not relay additional or different information from the witnesses' trial testimony about what happened. We are unconvinced the admission of this evidence rendered defendant's trial fundamentally unfair. Any error was one of state law only.

### 2.     Any Error of State Law Was Harmless

The prejudicial effect of an error of state law is assessed under the standard articulated in *Watson.* (*People v. Duarte* (2000) 24 Cal.4th 603, 618–619.) Under that standard, reversal is not warranted unless "it is reasonably probable that a result more favorable to [defendant] would have been reached in the absence of the error." (*Watson*, *supra*, 46 Cal.2d at p. 836.)

For many of the same reasons the error was not of constitutional magnitude, there is no reasonable probability the verdict would have been more favorable to defendant absent admission of the out-of-court statements. The jury was instructed not to consider the statements for their truth; the witnesses' trial testimony matched the out-of-court statements almost verbatim; and the out-of-court statements did not relay any additional evidence necessary to prove the charges nor did they provide a critical or missing evidentiary link or supply the sole basis to draw a necessary inference on any of the counts. And, the witnesses' out-of-court statements were not emphasized or even mentioned to the jury in the prosecution's closing arguments.

Moreover, the witnesses testified very consistently about what defendant said and did during the incident. There was admitted surveillance video, which is discussed *post*,

14.

the jury could reasonably interpret as supporting and corroborating the witnesses' versions of events in salient respects. The evidence against defendant on counts 1 and 4 was strong. The only evidence defendant never made any threats or bumped or pushed Tamra was provided by Za'un, who was not in the store for the entire confrontation. Any possible credibility enhancing effect from the deputies' relaying the out-of-court statements was negligible under these circumstances. Even when confessions are involved, "'if the properly admitted evidence is overwhelming and the … extrajudicial statement is merely cumulative of other direct evidence, the error will be deemed harmless.'" (*People v. Houston* (2005) 130 Cal.App.4th 279, 296 [assessing harm resulting from error under the stricter *Chapman* standard].)

Defendant argues the jury's inability to reach a verdict on counts 2 and 3 suggests a close case and shows it was reasonably probable defendant would have obtained a better outcome on counts 1 and 4 absent those out-of-court witness statements.

Counts 2 and 3 alleged defendant made criminal threats under section 422 against Sandra and Tamra, respectively. The jury was instructed pursuant to CALCRIM No. 1300 regarding a violation of section 422. This instruction required them to determine, among other elements, whether defendant "willfully threatened to unlawfully kill or unlawfully cause [GBI] to" Sandra and Tamra in counts 2 and 3, respectively.

Even if the jury credited the witnesses entirely, there was no testimony defendant specifically directed his threats at Sandra or Tamra, even though his threat to come back with a gun and shoot up the store could have been interpreted as such. This could very well have been the issue on which the jury hung, which a jury question during deliberation suggests.[4] But whether it was or not, the jury's deadlock on counts 2 and 3

---

[4] During deliberations, the jury sent the court a note that stated, "'Speak to the judge [to] explain criminal threat on count of certain criteria. Need to explain in detail, specifically how number one and number six relates to Counts 2 and 3.'" When the court assembled the jury to respond to the question, the jury foreman indicated there were "six things [the jury] have to agree on and it's a fraction of us saying number one is not valid and others saying well, that doesn't

15.

did not necessarily relate to any witness credibility issue that would have applied across all of the counts. In other words, even in the absence of the witnesses' out-of-court statements, the jury's deadlock on counts 2 and 3 could have occurred anyway. This deadlock does not necessarily bear on whether the verdict on count 1 (criminal threats against Becki) and count 4 (misdemeanor battery against Tamra) was a close call or whether defendant could have achieved a better outcome on those counts in the absence of the out-of-court statements.

For these reasons, we conclude the admission of the witnesses' out-of-court statements was harmless. Moreover, because the admission of this testimony was not prejudicial, any failure by defendant's trial counsel to object to the relevance of the out-of-court statements cannot establish ineffective assistance. (*Strickland v. Washington* (1984) 466 U.S. 668, 694 [to show ineffective assistance of counsel, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"].)

## II. Admission of Cell Phone Recording of Surveillance Video

Defendant maintains the trial court erroneously admitted Becki's cell phone recording of the store surveillance video from the date of the incident. Defendant contends that because the cell phone-recorded video segment was taken by an interested witness and did not include all footage of the time defendant was inside the store, it was incomplete and inadmissible under the fairness principles embodied by Evidence Code section 356. Moreover, because the cell phone-recorded video only captured a segment of the incident and took an excessive amount of time to authenticate, defendant contends it was unduly prejudicial under Evidence Code section 352.

---

matter. Number six is more important than number one." The court instructed the jury that they needed to decide whether all the elements they were instructed on under CALCRIM No. 1300 were proven beyond a reasonable doubt. The court then gave the CALCRIM No. 1300 instruction to the jury again.

The People maintain that because Becki was thoroughly cross-examined by defense counsel regarding her recording of the video, the requirements of Evidence Code section 356 were satisfied. As to Evidence Code section 352, the People maintain the video was highly probative of defendant's conduct, and there was nothing inflammatory or otherwise unduly prejudicial about it.

### A. Background

A few days before trial, Becki was able to record a portion of the store's July 4, 2018, surveillance video from her cell phone, which she delivered to the prosecutor. The video is approximately two minutes in length. It appears to be video of a computer screen with nine separate camera angles, four of which show nothing. Defendant objected to its admission at trial and an Evidence Code section 402 hearing was held.

At the Evidence Code section 402 hearing, Becki testified the store had surveillance footage of the incident that she showed to the investigating deputies who were dispatched to the scene that day. The video she showed the deputies did not have audio. Becki was unable to provide the deputies with a copy of the video that day in the absence of the store's main manager.

Becki ultimately used her cell phone to record the surveillance video while it played on the store's computer screen. She attempted to email a copy of her cell phone recording to Deputy Perry, but she was unsuccessful in sending it. She then had a friend help her transfer the video to a portable storage device, which she gave to the prosecutor.

Her cell phone recording did not alter or delete anything from the original surveillance video. The picture from the cellphone recording has some movement because the phone was hand-held during the recording; any audio present on the cell phone recording was picked up by the cell phone, not audio from the original surveillance video.

Deputy Perry testified when he investigated the incident on July 4, 2018, at the store, he asked Becki whether the store had surveillance video. Becki showed Perry the

video from the store's system, which had visual images but no audio. Perry was unable to obtain a copy of the video, but he detailed what he observed in his report. Upon viewing the cell phone recording at the hearing, Perry testified it accurately depicted what he had viewed that day at the store.

The trial court ruled the video was relevant and there had been a sufficient foundation laid by Perry and Becki. The court also ruled the issue of how clear the video was or whether Becki had an ulterior motive for recording only a portion of the surveillance video was an issue of weight for the jury to address. As to undue prejudice, the court determined the video was probative and it would not present an undue burden or consumption of time, even if they had to present the video to the jury frame by frame.

At trial, Becki explained in more detail that she had called her store manager on the day of the incident to obtain a copy of the surveillance video, but she was unable to take directions from her manager over the phone to do so. Becki decided to wait until her store manager could come to the store and make a copy. Becki tried to create a CD copy of the video surveillance, but could not do so. A day or two after the event, Becki decided to record the surveillance video from her phone while it played on the computer at the store.

A week or so before trial, the deputies returned to the store to obtain a copy of the surveillance footage, but Becki was not at work and the assistant manager on duty that day could not get the store's surveillance video to go back far enough in its footage to make a copy for them. Becki attempted to email her cell phone recording to one of the deputies, but it was returned to her with a message it was sent to an invalid email address. A friend helped Becki transfer the cell phone recording to a portable storage device, which she gave to the prosecutor a few days before trial.

**B.      Evidence Code Section 356**

Pursuant to Evidence Code section 356, "[w]here part of an act, declaration, conversation, or writing is given in evidence by one party, the whole on the same subject

18.

may be inquired into by an adverse party; when a letter is read, the answer may be given; and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it understood may also be given in evidence."

This statute codifies the common law doctrine of completeness. The purpose of the rule "is to prevent the use of selected aspects of a conversation, act, declaration, or writing, so as to create a misleading impression on the subjects addressed. [Citation.] Thus, if a party's oral admissions have been introduced in evidence, he [or she] may show other portions of the same interview or conversation, even if they are self-serving, which 'have some bearing upon, or connection with, the admission … in evidence.'" (*People v. Arias* (1996) 13 Cal.4th 92, 156; accord *People v. Westerfield* (2019) 6 Cal.5th 632, 696.)

We review the trial court's determination of whether or not to admit evidence under this provision for abuse of discretion. (See *People v. Pride* (1992) 3 Cal.4th 195, 235.) A reviewing court may not disturb a trial court's exercise of discretion in admitting or excluding evidence unless the appellant shows the court "exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice [citation]." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9–10.)

We have been presented with no authority Evidence Code section 356 operates to *exclude* properly authenticated video evidence simply because it captures only a segment of an event or interaction. The rule operates to allow a party to introduce additional evidence, even hearsay, to provide context for a selected aspect of other admitted evidence. Here, the cell phone recording was authenticated by witnesses Becki and Perry, and any disputed factual issues regarding authentication were for the jury to resolve. As the People note, Becki was available for cross-examination regarding what occurred before the recorded segment that was shown and she was subject to cross-

19.

examination on how she recorded the video and why she did not produce it to the prosecution until a few days before trial.

Defendant suggests events not captured by Becki's cell phone recording might give more context and explain why defendant was so agitated—i.e., that he was verbally provoked. Defendant maintains the segment Becki recorded may have given the jury a misleading impression about what occurred because they did not see the full video captured by the surveillance system. But this is only speculation because defendant offers no evidence such provocation occurred prior to the time Becki started recording from the surveillance video. Defendant notes he told the interviewing probation officer before sentencing that he was struck by one of the witnesses, but that was not trial evidence. Defendant points to the fact Za'un testified some of the women directed racial epithets at defendant, but there was no indication this occurred *before* the cell phone-recorded segment because Za'un was not in the store at that time. Additionally, the store's surveillance video had no audio so what was said to defendant prior to the start of the video segment would not be included in any event. It is speculative to assert the segment of the store surveillance video recorded by Becki *may* have been misleading.

Defendant also asserts there were multiple angles available on the original store surveillance system, but Becki failed to include those portions in her cell phone recording. Our review of the record reflects no testimony that certain camera angles were excluded by Becki. The video recorded from the store's computer simultaneously shows nine different camera angles in nine separate squares on the screen. Only six of those squares contain images, and only four of those six squares capture portions of the store where the incident occurred.[5] Becki testified the cameras in the store are motion

_____

[5] Three of the squares labeled "MGR," "STOCK," and "EXTERIOR" were blank screens with no images. Two of the squares stated "NO RECORD" and the images in those squares were static (these were labeled "HBA" for Health and Beauty Aisle and "LAUNDRY." The first, far left corner square captures what appears to be an entrance/exit to the store from inside the store facing out; the next square to the right is labeled "REG # 1" and appears to capture a

activated, so there was no recorded footage from the manager's office and the stockroom cameras.

The crux of the issue is that Becki's cell phone recording did not capture all of defendant's time in the store—i.e., Becki did not start recording early enough in the surveillance footage. However, the cell phone recording was relevant and authenticated. We decline to construe Evidence Code section 356 to exclude a relevant and authenticated video because a more complete video was unavailable at the time admission of the cell phone recording was sought. There was no error in admitting the video under Evidence Code section 356.

## C.     Evidence Code Section 352

Defendant also argues the cell phone recoding of the surveillance video was unduly prejudicial because it was entirely redundant of the witnesses' trial testimony, it painted an inadequate and biased picture for the jury, and it took an undue amount of time in the trial to discuss aspects of its authenticity such as why it did not record all of the available footage from the surveillance recording and why it was produced just days before trial.

Evidence is relevant if it has any tendency in reason to prove or disprove any disputed fact of consequence to the determination of an action. (Evid. Code, § 210.) But relevant evidence should be excluded if the trial court, in its discretion, determines that its probative value is substantially outweighed by the probability that its admission will either be unduly time consuming or create a substantial danger of undue prejudice, confusion of the issues, or mislead the jury. (Evid. Code, § 352.) Unduly prejudicial evidence in this context is that which evokes an emotional bias against the defendant

_____

checkout register; the third square on the top, right corner is labeled "REG #2" and appears to capture the second checkout register. Finally, just below the top, right corner square image is an image labeled "EXIT," which appears to face into the store from the exit/entrance. Becki described these views during her cross-examination.

without regard to its relevance to material issues. (*People v. Kipp* (2001) 26 Cal.4th 1100, 1121.) A court's ruling under Evidence Code section 352 is reviewed for abuse of discretion. (*People v. Kipp*, *supra*, at p. 1121.)

The video evidence was relevant to corroborating aspects of the witnesses' testimony that defendant became angry in the store and an altercation occurred where his brother had to physically pull him out of the store. The video showed how Za'un pulled defendant out of the store, the length of time that took, and the degree of defendant's struggle against his brother to remain in the store. These aspects of the video provide a reasonable basis to draw inferences regarding the degree of agitation defendant exhibited and corroborate and support the witnesses' testimony. The video was highly relevant to those issues.

As to prejudice, "[t]he prejudice that [Evidence Code] section 352 '"is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence." [Citations]. "Rather, the statute uses the word in its etymological sense of 'prejudging' a person or cause on the basis of extraneous factors. [Citation.]" [Citation.]' [Citation.] In other words, evidence should be excluded as unduly prejudicial when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction. In such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose." (*Vorse v. Sarasy* (1997) 53 Cal.App.4th 998, 1009.)

Although the video was damaging to defendant's case in that it corroborated much of the witnesses' versions of events, it was not unduly prejudicial in the sense used by Evidence Code section 352. The video did not contain content that would have encouraged a purely emotional reaction from the jury unrelated to a logical evaluation of the evidence and its relevance. Defendant makes much of the fact the cell phone

recording was a "personal edited video" by an interested party, but that relates to authentication, not whether it was unduly prejudicial. Any conflicting inferences that could be drawn about authenticity go to the weight of the evidence and was an issue for the jury. (*People v. Goldsmith* (2014) 59 Cal.4th 258, 267.)

Defendant argues authentication of the video was time consuming at trial because of how it was obtained. While threshold authentication of the cell phone recording did require a separate Evidence Code section 402 hearing, and its circumstances presented factual issues that had to be covered during trial testimony, the trial was not unusually lengthy as a result nor does the transcript reflect an inordinate amount of testimony or time dedicated to the video's authenticity.

The cell phone recording of the surveillance video was relevant evidence to corroborate salient aspects of the witnesses' testimony—it was not unnecessarily cumulative. Any video that captures an event about which a witness testifies is going to be cumulative to some degree. Here, four witnesses saw events from different angles, in separate locations within the store or near the door, and they took different actions—their testimony was not repetitive or cumulative for that reason nor was the video, as it helped to corroborate portions of their individual accounts. In short, the video was not unduly prejudicial under Evidence Code section 352.

## III. No Abuse of Discretion in Sentencing Section 422 Conviction as a Felony

Defendant argues the trial court erred in denying his motion to reduce his conviction under section 422 to a misdemeanor. Defendant maintains the court gave no rationale for denying the request, and there was an inadequate basis to sentence the crime as a felony. The People maintain the trial court acted within its discretion in denying the motion based on the facts of the crime presented at trial, and defendant had already suffered a prior conviction for making criminal threats that had been sentenced as a misdemeanor.

## A.    Trial Court's Discretion Under Section 17, Subdivision (b)

A "wobbler" is an offense that, in the trial court's discretion, may be punished as either a felony or a misdemeanor.  (§ 17, subd. (b) (section 17(b) or § 17(b)); *People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 974 (*Alvarez*).)  Defendant's conviction under section 422 was a wobbler because it was subject to punishment in either the county jail not to exceed one year, or by imprisonment in the state prison.  (§§ 422, subd. (a), 17, subds. (a) & (b).)

The trial court has sole discretion to treat a wobbler as a felony or misdemeanor for sentencing purposes.  (*Alvarez, supra*, 14 Cal.4th at p. 977.)  "By its terms, [section 17(b)] sets a broad generic standard."  (*Ibid*.)  "[S]ince all discretionary authority is contextual, those factors that direct similar sentencing decisions are relevant, including 'the nature and circumstances of the offense, the defendant's appreciation of and attitude toward the offense, or his traits of character as evidenced by his behavior and demeanor at the trial.'  [Citations.]  When appropriate, judges should also consider the general objectives of sentencing such as those set forth in California Rules of Court, rule [4.410]."  (*Id.* at p. 978, fn. omitted.)  "As a general matter, the court's exercise of discretion under section 17(b) contemplates the imposition of misdemeanor punishment for a wobbler 'in those cases in which the rehabilitation of the convicted defendant either does not require, or would be adversely affected by, [felony punishment].'"  (*People v. Park* (2013) 56 Cal.4th 782, 790.)

One of the purposes of granting the trial court sentencing discretion under section 17(b) is to allow the sentencing court "greater flexibility in tailoring the punishment to fit the crime and the offender, recognizing the same crime can deserve different types of punishment depending on the seriousness of the circumstances of its commission."  (*People v. Tran* (2015) 242 Cal.App.4th 877, 887.)  As each case is distinct, the court has discretion to impose a sentence that is appropriate in light of all the relevant circumstances.  (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1393.)

To establish an abuse of discretion, "'[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.'" (*Alvarez*, *supra*, 14 Cal.4th at pp. 977–978.)

### B.      Analysis

In denying defendant's motion to reduce his section 422 conviction to a misdemeanor, the court stated it "was present for the trial and has considered the evidence that the jury did review in terms of coming back to a guilty of [section] 422. At this time[,] the Court is not going to reduce this to a misdemeanor."

Defendant claims this provided no rationale to deny the motion, and it was unclear if the court had a specific reason. According to defendant, the current offense under section 422 was "not particularly egregious," the evidence indicated he was provoked possibly by racial slurs and other aggressive language, and he did not physically harm anyone and left the store willingly. Deputies did not show up until at least an hour after they were dispatched, which reflected the nonseriousness of the offense. Further, according to defendant, his prior history is not particularly egregious in that he had only three prior offenses on his record and two of them were misdemeanors.

Contrary to defendant's argument, the court stated it refused to reduce the section 422 conviction to a misdemeanor because of the facts presented to the jury about the offense. That is an articulation of rationale and is based on a relevant consideration. Defendant's remaining arguments present only a different way to balance or consider the facts relevant to the offense and defendant's prior criminal history. But this does not establish the court did not understand the scope of its discretion or relied on incorrect facts or law in reaching its decision. (*Alvarez*, *supra*, 14 Cal.4th at p. 978, quoting *People v. Preyer* (1985) 164 Cal.App.3d 568, 573 ["'[A] decision will not be reversed

25.

merely because reasonable people might disagree. "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge." [Citations.]'"].)

Based on the trial evidence, there were facts to support a conclusion defendant started to argue with Becki, and that he threatened to come back with a gun to kill her and "shoot up" the store. There was testimony he attempted to strike Becki and made physical contact with Tamra in trying to do so. And, there was testimony and video showing he had to be dragged out of the store by his brother. Sandra, the cashier, was frightened enough to call 911. Becki, Sandra, Tamra and Brittany all testified they were so frightened by defendant's conduct and threats they locked themselves in the store until deputies arrived. These were legitimate facts the court was entitled to weigh in determining not to reduce the current conviction to a misdemeanor. (*Alvarez*, *supra*, 14 Cal.4th at p. 978 [nature and circumstances of the offense is a discretionary factor to consider].) No abuse of discretion can be shown by arguing the facts could have been weighed or evaluated differently. The trial court did not err in refusing to reduce defendant's section 422 conviction to a misdemeanor.

## IV. Jury Trial Waiver on the Fact of the Prior Conviction

Defendant makes two arguments in his opening and supplemental briefs: (1) that he had a constitutional right to a jury on every issue related to his prior conviction, which he did not personally, knowingly and voluntarily waive—i.e., the waiver obtained was invalid; and (2) the evidence was insubstantial to support the trial court's finding his prior conviction constituted a strike within the meaning of the Three Strikes law.

The People maintain there is no constitutional right to a jury trial on the fact of a prior conviction; any right to a jury on the prior conviction determination here was purely one of statute under section 1025. Thus, when defendant failed to object to the trial court's discharge of the jury and his counsel waived trial by jury on the prior conviction on defendant's behalf, any argument as to the validity of that waiver was forfeited.

26.

Moreover, the People argue, because the right to a jury trial was statutory, the waiver did not need to be express or personal, it could be validly waived by defendant's counsel. The People do not address the substantiality of the evidence to support the trial court's finding the prior conviction constituted a strike.

### A.  Background

Prior to trial, defendant's counsel sought to bifurcate the issue of defendant's alleged prior strike.  The trial court inquired with defense counsel whether a jury trial on the truth of that prior strike was waived, and counsel responded affirmatively.

In ruling on the motions in limine, the issue of the prior strike was revisited.  One of the defense motions in limine sought to bifurcate the trial on the issue of the alleged strike prior.  The court ruled that it was granting the motion to bifurcate the issue of the prior and asked defense counsel again whether a jury trial was being waived.  Counsel again responded in the affirmative, and the court ordered a bench trial on the issue of the prior strike would commence after the jury rendered its verdict.

The court conducted a bench trial on the alleged strike prior on December 3, 2018, after the jury had reached its verdict.  The prosecution provided a copy of the following documents.

- An April 17, 2009, felony complaint filed in Los Angeles Superior Court, which alleged defendant and Za'un Jahi Sims committed attempted second degree robbery under section 664/211, an assault by means likely to produce GBI under section 245, former subdivision (a)(1), and a battery with serious bodily injury under section 243, subdivision (d);

- A court order holding defendant to answer, dated April 29, 2009;

- A Los Angeles Superior Court document indicating the abstract of judgment in the 2009 case did not exist because defendant was placed on formal probation and a sentencing minute order of September 22, 2009, had been provided;

27.

- Minute orders from the Los Angeles Superior Court for defendant's 2009 Los Angeles Superior Court case No. BA355402, including the sentencing minute order dated September 22, 2009, showing defendant pleaded no contest to count 3 for violation of section 243, subdivision (d);

- Minute order from Los Angeles Superior Court showing defendant violated probation in Los Angeles Superior Court case No. BA355402 and was then sentenced; and

- California Law Enforcement Telecommunication System documents showing defendant's prior convictions.

The prosecutor argued the prior conviction under section 243, subdivision (d), in September 2009 was a strike—i.e., a serious felony for purposes of section 667, subdivision (e)(1). The documents were admitted with no objection.[6]

The court ruled that based on the exhibit, beyond a reasonable doubt, defendant is the same person as charged and convicted in Los Angeles Superior Court case No. BA355402, where he was a codefendant. The court also found beyond a reasonable doubt that defendant was convicted of a violation of section 243, subdivision (d), which the court determined was a strike.

## B.     Issue of Waiver of Jury Trial was Forfeited and Unmeritorious

Defendant's argument about the invalidity of his waiver of a jury trial on the alleged strike prior is multi-part. Defendant argues that under United States Supreme Court precedent in *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 (*Apprendi*), *Descamps v. United States* (2013) 570 U.S. 254, 269 (*Descamps*), and *Mathis v. United States* (2016) ___ U.S.___ [136 S.Ct. 2243, *2252] (*Mathis*), along with our high court's

---

**6**     The prosecutor also argued that on the "rap sheet," it is noted defendant suffered another conviction in June 22, 2011, for a violation of section 487, subdivision (a), and that the sentence on that conviction was doubled. The prosecutor maintained that while the conviction itself did not show it was a strike, based on the fact the sentence was doubled for that conviction, it reflects a prior strike. Nevertheless, the court clarified the prior felony offense from September 22, 2009, under section 243, subdivision (d), was the prior conviction alleged to be a strike—not some other prior conviction.

decision in *People v. Gallardo* (2017) 4 Cal.5th 120, 135 (*Gallardo*), he has a federal constitutional right to a jury trial on *every* aspect of determining whether a prior conviction constitutes a strike pursuant to the Three Strikes law. Defendant argues the California Supreme Court's decision in *People v. Epps* (2001) 25 Cal.4th 19, 23 (*Epps*), which fails to recognize the constitutional breadth of the right to a jury trial as to prior convictions, has been effectively abrogated by *Apprendi*, *Descamps*, *Mathis*, and *Gallardo*.

Defendant argues further that a federal constitutional jury trial right may be waived only by defendant expressly and personally, not through his counsel, and there must be sufficient evidence from the colloquy with the trial court and the record to affirmatively show defendant knew and understood what waiving his right to a jury trial on the prior strike really meant. Because defendant did not personally or expressly waive his constitutional right to a jury trial on whether the prior conviction constituted a strike, the waiver was invalid. Further, there was no showing defendant understood his rights or waived them knowingly and intelligently because the trial court never explained to him what the right to a jury meant or how it was different from a bench trial.

In 2017, our Supreme Court clarified in *Gallardo* that, based on the United States Supreme Court decisions in *Apprendi*, *Descamps*, and *Mathis*, the trial court's role in determining whether a prior conviction constituted a serious felony or a strike was more limited than California case law previously recognized. (See *People v. McGee* (2006) 38 Cal.4th 682, overruled by *Gallardo*, *supra*, 4 Cal.5th at pp. 134–136 [holding *McGee* no longer "tenable" insofar as it authorized trial courts to make findings about the conduct giving rise to a defendant's prior conviction] (*McGee*).)

The court held "'[t]he Sixth Amendment contemplates that a jury—not a sentencing court—will find' the facts giving rise to a conviction, when those facts lead to the imposition of additional punishment under a recidivist sentencing scheme. [Citation.] This means that a sentencing court may identify those facts it is 'sure the jury … found'

29.

in rendering its guilty verdict, or those facts as to which the defendant waived the right of jury trial in entering a guilty plea. [Citation.] But it may not 'rely on its own finding' about the defendant's underlying conduct 'to increase a defendant's maximum sentence.' [Citation.] [¶] We are persuaded that the approach sanctioned in *McGee* is no longer tenable insofar as it authorizes trial courts to make findings about the conduct that 'realistically' gave rise to a defendant's prior conviction. The trial court's role is limited to determining the facts that were necessarily found in the course of entering the conviction. To do more is to engage in 'judicial factfinding that goes far beyond the recognition of a prior conviction.'" (*Gallardo*, *supra*, 4 Cal.5th at p. 134.)

As such, "a court considering whether to impose an increased sentence based on a prior qualifying conviction may not determine the 'nature or basis' of the prior conviction based on its independent conclusions about what facts or conduct 'realistically' supported the conviction. (*McGee*, *supra*, 38 Cal.4th at p. 706.) That inquiry invades the jury's province by permitting the court to make disputed findings about 'what a trial showed, or a plea proceeding revealed, about the defendant's underlying conduct.' [Citation.] The court's role is, rather, limited to identifying those facts that were established by virtue of the conviction itself—that is, facts the jury was necessarily required to find to render a guilty verdict, or that the defendant admitted as the factual basis for a guilty plea." (*Gallardo*, *supra*, 4 Cal.5th at p. 136, fn. omitted.)

Nevertheless, *Gallardo* reiterated that a trial court may still properly determine whether a defendant suffered a prior conviction without implicating the defendant's constitutional right to a jury. (*Gallardo*, *supra*, 4 Cal.5th at p. 138 [a defendant has no absolute right to jury trial on the fact of a prior conviction].) *Gallardo* also reaffirmed that "determinations about the nature of prior convictions are to be made by the court, rather than a jury, based on the record of conviction." (*Ibid.*)

As such, there is no federal or state constitutional right to a jury trial on the *fact of* a prior conviction for purposes of recidivist sentence enhancements. Rather, the right to a

jury trial as to the fact of a prior conviction is statutory only.  (§ 1025, subds. (b) & (c);
*Gallardo*, *supra*, 4 Cal.5th at p. 125 [a defendant has a "statutory right to a jury trial on
'the question of whether or not the defendant has suffered the prior conviction'—though
not 'whether the defendant is the person who has suffered the prior conviction'"]; *People
v. Mosby* (2004) 33 Cal.4th 353, 360, citing *Apprendi*, *supra*, 530 U.S. at p. 490 & *Epps*,
*supra*, 25 Cal.4th at p. 23; see § 1158.)  *Gallardo* fully considered *Apprendi*, *Descamps*,
and *Mathis* and nonetheless expressly reaffirmed the trial court may determine the fact of
a prior conviction without infringing on the defendant's Sixth Amendment rights.  We are
bound by *Gallardo*.[7]  The right to a jury on the fact of a prior conviction is statutory, not
constitutional.

Here, because there was no objection to discharging the jury and defendant's trial
counsel expressly waived a jury trial as to the fact of the prior conviction, any issue
regarding the effectiveness of his waiver of the statutory right to a jury trial on the prior
conviction has been forfeited.  (See *People v. Grimes* (2016) 1 Cal.5th 698, 737–738
[absent an objection to the discharge of the jury or commencement of court trial, a
defendant is precluded from asserting on appeal, a claim of ineffectual waiver of the
statutory right to jury trial on the fact of a prior conviction in connection with recidivist
enhancement allegations]; *People v. Saunders* (1993) 5 Cal.4th 580, 589–590; see also
*People v. Vera* (1997) 15 Cal.4th 269, 276 ["It is both unfair and inefficient to permit a
claim of error on appeal that, if timely brought to the attention of the trial court, could
have been easily corrected or avoided."], overruled in part on other grounds by *People v.
French* (2008) 43 Cal.4th 36, 47, fn. 3.)

Moreover, because the right to a trial on the fact of the prior conviction is
statutory, defendant's argument fails on the merits.  "The requirement of an express

---

[7]     Defendant acknowledges in his reply brief that this court is bound by decisions of the
California Supreme Court and that this issue was "raised in the opening brief to preserve it for
review in a higher court .…"

waiver applies to the constitutional right to a jury trial, but not to jury trial rights that are established only by statute." (*People v. French*, *supra*, 43 Cal.4th at p. 46.) The limited statutory right to a jury on the fact of a prior conviction can be waived by a failure to object, and, a fortiori, by counsel's express waiver. The cases defendant cites regarding the express, personal and knowing waiver of a jury trial relate to the constitutional right to a jury trial on pending criminal charges. Those cases have no relevance to the statutory right to a jury trial on the fact of a prior conviction. (*People v. Saunders*, *supra*, 5 Cal.4th at p. 589, fn. 5; *People v. French*, *supra*, at p. 46; *People v. Thomas* (2001) 91 Cal.App.4th 212, 223.)[8]

## V. No Substantial Evidence to Support Prior Strike Finding

Defendant argues in his supplemental brief there was no substantial evidence to support the trial court's conclusion the prior conviction under section 243, subdivision (d), constituted a strike within the meaning of section 1192.7, subdivision (c)(8). The People do not address this issue.[9]

"The People must prove all elements of an alleged sentence enhancement beyond a reasonable doubt." (*People v. Miles* (2008) 43 Cal.4th 1074, 1082.) "On review, we examine the record in the light most favorable to the judgment to ascertain whether it is supported by substantial evidence. In other words, we determine whether a rational trier of fact could have found that the prosecution sustained its burden of proving the elements of the sentence enhancement beyond a reasonable doubt." (*Id*. at p. 1083.)

Battery under section 243, subdivision (d), is committed when "serious bodily injury is inflicted" on the victim. To prove this conviction under section 243,

---

[8]    Defendant makes no claim here, nor did he object below, that the trial court engaged in impermissible factfinding with respect to his conduct that formed the basis of his prior conviction.

[9]    When defendant's request to file a supplemental brief was granted, we ordered respondent to address any response to the supplemental brief in the People's main responsive brief.

subdivision (d), constituted a strike prior, the prosecutor submitted the original felony complaint, which charged defendant *and a codefendant* with battery causing serious bodily injury (§ 243, subd. (d)).  There was also an enhancement allegation defendant and his codefendant personally inflicted GBI on the victim under section 12022.7, subdivision (a).  Minute orders from that court indicate defendant was held to answer on this and other charges after a preliminary hearing, and later defendant entered a no contest plea to the section 243, subdivision (d), battery charge.  The sentencing minute order indicates a judgment of conviction was entered for violation of section 243, subdivision (d), but nothing is indicated regarding the GBI enhancement under section 12022.7, subdivision (a).

Battery with serious bodily injury under section 243, subdivision (d), is not expressly listed as a serious felony under section 1192.7, subdivision (c), or a violent felony under 667.5, subdivision (c).  The offense is a serious felony, and thus a strike prior under section 667, subdivisions (d)(1) and (e)(1), when a defendant personally, rather than aiding and abetting another, inflicts GBI on the victim who was not an accomplice.  (§ 1192.7, subd. (c)(8); *People v. Cole* (1982) 31 Cal.3d 568, 572; *People v. Bueno* (2006) 143 Cal.App.4th 1503, 1508 [the prosecution is required to prove that the victim was not an accomplice and that the defendant *personally* inflicted the injury rather than he aided and abetted another to establish § 243, subd. (d), violation is serious felony].)  "'[S]erious bodily injury'" as used in section 243, subdivision (d), and "'great bodily injury,'" as used in section 12022.7, are essentially the same element.  (*People v. Johnson* (2016) 244 Cal.App.4th 384, 391.)  Therefore, finding the prior conviction under section 243, subdivision (d), was a strike hinged on whether defendant *personally* inflicted serious bodily injury on the victim who was not an accomplice.

The sentencing court's minute order indicates there was a factual basis for defendant's plea to a violation of section 243, subdivision (d), but nothing indicates what the factual basis was or whether defendant made any admission as to those facts.  Further,

33.

the record does not reflect defendant admitted or denied the GBI enhancement allegation. (§ 969f, subd. (a) ["If the defendant pleads guilty of the offense charged, the question whether or not the defendant committed a serious felony as alleged shall be separately admitted or denied by the defendant."].) As there was no mention of the GBI enhancement at the time of sentencing, it was essen[tially] dismissed. (*People v. Leslie* (1996) 47 Cal.App.4th 198, 204 [serious felony allegation "essentially dismissed" in the earlier case where there was no admission or denial by the defendant regarding serious felony allegation].)

The records admitted did not establish defendant *personally* inflicted serious injury on the victim in violating section 243, subdivision (d): because defendant was charged as a codefendant for this crime, it is possible he did not personally inflict serious bodily injury on the victim. The matter shall be remanded for a retrial on the prior conviction allegation, at the People's election. (*People v. Barragan* (2004) 32 Cal.4th 236, 239, 241–242 [permitting retrial of strike allegation after appellate finding of evidentiary insufficiency]; *Monge v. California* (1998) 524 U.S. 721, 728–279 [double jeopardy clause does not bar retrial of prior conviction allegation after appellate finding of evidentiary insufficiency].)

Pursuant to *Gallardo*, the scope of the trial court's inquiry into whether defendant's conduct underlying the section 243, subdivision (d), conviction renders it a serious felony is limited. (*Gallardo*, *supra*, 4 Cal.5th at p. 136, fn. omitted [trial court's role is limited to "identifying those facts that were established by virtue of the conviction itself—that is, facts the jury was necessarily required to find … or that the defendant admitted as the factual basis for a guilty plea"].) In the event the People forgo the opportunity for a retrial regarding the strike allegation based on the 2009 prior conviction for battery under section 243, subdivision (d), or the finding is not sustained upon retrial, defendant is entitled to a new sentencing hearing because the record does not clearly

indicate how the court would have sentenced defendant absent the strike, such as whether the sentences imposed for counts 1 and 4 would have been concurrent or consecutive.

## VI. Unauthorized Sentence on Count 4

The trial court sentenced defendant to one year in jail for the misdemeanor battery conviction under section 243, subdivision (a). Defendant correctly asserts this sentence is unauthorized because the statute permits a maximum sentence of only six months of imprisonment in the county jail and/or a fine of no more than $2,000. (§ 243, subd. (a).) It appears the trial court may have doubled the maximum term for the misdemeanor battery based on defendant's prior strike. However, prior strikes do not apply to double a current *misdemeanor* conviction. (§§ 667, subd. (e)(1), 1170.12, subd. (c)(1) [indeterminate term shall be twice the term otherwise provided as punishment "for the current felony conviction"].) The sentence is unauthorized. At resentencing, the trial court may not impose a total sentence of more than six months of jail time for the conviction under section 243, subdivision (a).

## VII. Remaining Arguments Under *Dueñas*

The trial court imposed a $300 restitution fine under section 1202.4, subdivision (b)(1), and the court also imposed a corresponding parole revocation fine (§ 1202.45) in the same amount, which was suspended, a $80 court operations assessment (§ 1465.8, subd. (a)(1)), and a $60 criminal conviction assessment (Gov. Code, § 70373). Relying on *Dueñas*, *supra*, 30 Cal.App.5th 1157, which was issued while this appeal was pending, defendant contends his fees and fines should be stayed or stricken based on his inability to pay.

Given the reversal of the trial court's prior conviction finding and remand for further proceedings that will require resentencing, we conclude it is unnecessary to reach defendant's *Dueñas* arguments; they are moot and we do not consider them.

## DISPOSITION

Defendant's convictions on counts 1 and 4 are affirmed. We reverse the trial court's finding that defendant's prior conviction under section 243, subdivision (d), constituted a strike prior and we remand for retrial on that issue at the People's election. Regardless whether the matter of the strike prior is retried on remand, the sentence is vacated and full resentencing is required. At resentencing, the trial court may not impose more than six months of jail time for defendant's conviction under section 243, subdivision (a). In all other regards, the judgment is affirmed.

MEEHAN, J.

WE CONCUR:


HILL, P.J.


POOCHIGIAN, J.

36.