Filed 11/1/21  P. v. Vang CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>JIMMY YOUNG VANG,<br><br>　　　　Defendant and Appellant. | C090329<br><br>(Super. Ct. No. 62152970D) |

A group of people taped up Tu Nguyen, then drove him to an open field near the Thunder Valley Casino, where he was shot to death.  Two of the accomplices implicated defendant Jimmy Young Vang as the killer.

Following a jury trial, defendant was convicted of first degree murder with a felony-murder (kidnapping) special circumstance (Pen. Code, §§ 187, subd. (a), 190.2, subd. (a)(17))[1] and kidnapping with personal use of a firearm (§§ 207, subd. (a),

---

[1]  Undesignated statutory references are to the Penal Code.

1

12022.53, subds. (b)-(d)), and a strike (§§ 1170.12, subd. (a), 667, subd. (a)(1)). The trial court sentenced defendant to a state prison term of life without parole plus 25 years to life plus eight years.

On appeal, he contends: (1) there is insufficient corroboration of the accomplice evidence to support the convictions; (2) he was entitled to an instruction that the jury must be unanimous on the theory of guilt for first degree murder; (3) the trial court failed to instruct on every element of felony murder; (4) it was prejudicial error to allow testimony regarding his prior possession of firearms; (5) refusing a continuance to procure a defense witness violated his right to present a defense; and (6) sentencing on the kidnapping count should have been stayed.

Sufficient evidence corroborates the accomplice evidence. California and United States Supreme Court precedent both hold that the jury need not be unanimous regarding the theory of liability. While the felony-murder instruction omitted an element, the error was harmless beyond a reasonable doubt. Finding no abuse of discretion in the decision to admit the gun testimony and to deny the continuance, we shall modify the judgment to stay the kidnapping sentence pursuant to section 654 and affirm the judgment as modified.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Prosecution Case*

Vanessa Saechao was the girlfriend and cohabitant of Nguyen. Nguyen drove a white Honda Prelude, and frequently bought, fixed, and sold other Honda Preludes. In May 2017, defendant made several appointments with Nguyen to buy a car from him. Defendant became angry with Nguyen after he failed to show up for any of the meetings.

Nguyen spent the evening of May 25, 2017, working on a car at a friend's house while Saechao waited in Nguyen's car in front of the house. While Saechao waited, Nguyen came out of the house to show her a picture of a purse defendant was selling; Nguyen told Saechao he would check it out for her. Saechao also overheard defendant

2

yelling at Nguyen over the phone that night. Nguyen did not yell back; he explained to Saechao that defendant wanted to buy a car. Jerry Vang[2] also called Nguyen to ask if Nguyen could sell him some methamphetamine. Nguyen told Saechao he was going to Vang's house to check out the purse, and he would be home soon.

Raelyn Bergsten-Amour met defendant in early 2017[3] when she reached out to him on Facebook looking to buy methamphetamine. They started dating a few months later, living together primarily at Vang's house in Sacramento or in motels. Defendant wanted to buy a car because he and Bergsten-Amour depended on Vang to drive them around.

Nguyen arrived at Vang's house early in the morning on May 26. Defendant, Vang, Bergsten-Amour, and Vang's girlfriend Chang "Annie" Xiong[4] were there. They all smoked methamphetamine in the living room; at some point Xiong and Bergsten-Amour left the room. Upon returning to the living room, Bergsten-Amour heard someone say strip while defendant and Vang pointed guns at Nguyen.

After Nguyen stripped to his shorts, defendant told Bergsten-Amour to get tape from the kitchen and use it to bind Nguyen's arms to his sides. Defendant handed a nine-millimeter handgun to Xiong when she entered the room. Someone taped up Nguyen and put his pants back on. Defendant, who had a gun and was wearing a disposable "Tyvek" suit,[5] put Nguyen in the trunk of Nguyen's white Prelude. Defendant got in the driver's

---

[2] In order to avoid confusion, we refer to Jerry Vang as Vang and defendant Jimmy Young Vang as defendant.

[3] All further date references are to 2017 unless otherwise noted.

[4] Xiong pleaded guilty to false imprisonment (§ 236) with a firearm enhancement (§ 12022, subd. (a)(1)) in connection with this case.

[5] A Tyvek suit is a full body suit used to protect against hazardous and non-hazardous materials.

seat and Bergsten-Amour the passenger seat of Nguyen's car, while Vang and Xiong got into Vang's truck.

Defendant and Vang were in phone contact with each other as they drove. Defendant told Bergsten-Amour they were going to drop off Nguyen in Reno. She heard Nguyen squirming and pleading for help from the trunk. Defendant and Vang eventually stopped their vehicles so they could all smoke methamphetamine. When they resumed their trip, Vang lost sight of the Prelude, so he and Xiong returned to Vang's home. After defendant drove around for another hour, Bergsten-Amour told him, "If you are going to do what you are going to do, do it now or else I'm going to get out and walk."

After sunrise, defendant pulled Nguyen's car over near a field on West Sunset Boulevard in Lincoln. Defendant got out of the car and let Nguyen out of the trunk. Nguyen ran; Bergsten-Amour heard two or three gunshots, saw Nguyen running back to the car, then heard six more gunshots.

Defendant drove to a boat dock in Sacramento, where he discarded the Tyvek suit. He next drove to a condominium complex, parked the car, and told Bergsten-Amour to wipe down her area while he wiped down his. They then walked to a Jack in the Box restaurant, where they were picked up by Vang and Xiong. After defendant told Bergsten-Amour they needed to change clothes, Vang drove them to Walmart, where surveillance footage showed them buying new clothes.

Nguyen was found lying face down in the field at around 7:30 a.m. that morning. He was pronounced dead at the scene. Nguyen's pants were oddly buttoned, and his zipper was open. He had been shot seven times, with six entrance wounds on his head.

Nguyen's white Prelude was found near River Plaza Drive and Coconut Way in Sacramento. A search of Vang's residence found a .40-caliber handgun magazine and a nine-millimeter handgun. Neither weapon was used to fire the bullets that killed Nguyen.

A detective assigned to arrest defendant spotted him driving a Chevrolet Camaro near Florin Road and Franklin Boulevard at around 8:35 p.m. on June 18. The detective

started following defendant at a distance until defendant abruptly drove away at a high rate of speed. The detective activated his patrol lights and followed defendant at speeds exceeding 100 miles per hour. The Camaro eventually slid off a roadway and into a ditch near Arden Way. Defendant tried to flee but eventually surrendered after the detective pointed his service rifle at him.

Defendant's DNA was found on the steering wheel of Nguyen's Prelude and Bergsten-Amour could not be excluded from a DNA sample on the car's gearshift, while Vang, defendant, Xiong, and Nguyen were all excluded.[6] A cigarette butt near Nguyen's body had DNA from defendant and Bergsten-Amour.

Cell phone records show defendant and Vang called each other more than 30 times between 9:00 p.m. on May 25 and 7:12 a.m. on May 26. Cell tower data showed defendant's, Vang's, and Nguyen's phones were in the vicinity of Vang's residence until around 2:20 a.m. on May 26. Between 3:41 and 3:53 a.m., defendant's and Vang's phones used the same cell towers in Sacramento. Their phones used the same towers in Roseville between 4:14 and 4:59 a.m. Nguyen's phone connected with a Roseville tower at 5:02 a.m., then with a tower in Pleasant Grove at 5:21 a.m. Defendant's and Vang's phones diverged at 5:18 a.m., with Vang remaining in Roseville from 5:18 to 5:29 a.m., while defendant traveled through Rocklin, Pleasant Grove, and then Sacramento between 5:12 and 5:25 a.m. At 5:53 a.m., defendant connected with Sacramento and Woodland towers, while Vang connected with South Sacramento towers. Vang's phone connected with towers near his residence between 6:01 and 6:19 a.m., while defendant's phone was going south on Interstate 5 at the time. Vang's phone started moving again at 6:52 a.m., and met up with defendant's at 7:12 a.m.

---

[6] Bergsten-Amour told law enforcement she wiped down the Prelude's gearshift.

*Defense Evidence*

Veronica Ibarra shared a jail cell with Bergsten-Amour. While in custody, Bergsten-Amour told her that she shot Nguyen, as well as taped him up and spat on him. Ibarra did not know whether Bergsten-Amour was lying when she made the statements, as she appeared to be trying to gain street credibility in jail when she made them. On another occasion, Bergsten-Amour told Ibarra defendant shot Nguyen.

Jessica Lopez also served time in the same jail and heard rumors about the case. She told a defense investigator that, while in custody, Bergsten-Amour claimed to have shot Nguyen. Bergsten-Amour appeared to be bragging when she said this.

## DISCUSSION

## I

## *Accomplice Corroboration*

The accounts of Nguyen's abduction, transportation to the field, and his murder come from the testimony of two accomplices to the charged crimes, Bergsten-Amour and Xiong. Defendant contends there is insufficient corroborating evidence of their accounts to support his convictions. We disagree.

Section 1111 provides in pertinent part: "A conviction can not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

"The requirement that accomplice testimony be corroborated is an ' "exception[ ]" to the substantial evidence' rule. [Citation.] It is based on the Legislature's determination that ' "because of the reliability questions posed by" ' accomplice testimony, such testimony ' " by itself is insufficient as a matter of law to support a conviction." ' [Citations.] Section 1111 does not affect the admissibility of accomplice testimony but rather 'reflects a legislative determination of how accomplice testimony must be treated.' " (*People v. Romero and Self* (2015) 62 Cal.4th 1, 32.)

"Thus, for the jury to rely on an accomplice's testimony about the circumstances of an offense, it must find evidence that ' "without aid from the accomplice's testimony, tend[s] to connect the defendant with the crime." ' [Citations.] 'The entire conduct of the parties, their relationship, acts, and conduct may be taken into consideration by the trier of fact in determining the sufficiency of the corroboration.' [Citations.] The evidence 'need not independently establish the identity of the victim's assailant' [citation], nor corroborate every fact to which the accomplice testifies [citation], and ' "may be circumstantial or slight and entitled to little consideration when standing alone" ' [citation]. 'The trier of fact's determination on the issue of corroboration is binding on the reviewing court unless the corroborating evidence should not have been admitted or does not reasonably tend to connect the defendant with the commission of the crime.' [Citation.]" (*People v. Romero and Self, supra*, 62 Cal.4th at pp. 32-33.)

DNA evidence places defendant as the driver of Nguyen's car and at the place where Nguyen's body was found. Saechao's testimony provided evidence of motive, defendant being angry at Nguyen regarding the sale of a car to him. His flight from police is evidence of a guilty mind, further tying him to the crime. The cell phone evidence provides corroboration for the accomplices' account of them driving together in two vehicles until Vang drove back, with defendant and Bergsten-Amour in Placer County before meeting Vang again in South Sacramento, where, consistent with Bergsten-Amour's account, defendant and Bergsten-Amour tried to cover their tracks by changing into clothes they purchased at Walmart. Corroborating evidence places defendant at the murder scene, driving the car used to transport Nguyen from Vang's house to where he was murdered, and shows efforts to conceal the crime and a guilty

7

mind for defendant. There is sufficient corroborating evidence to support the convictions.[7]

## II

### *Ramos v. Louisiana and Unanimity*

The jury was instructed with CALCRIM No. 548 that it could find defendant guilty of first degree murder under a premeditation or a felony-murder theory, but it did not have to unanimously agree as to which theory.[8] Relying on *Ramos v. Louisiana* (2020) __U.S.__ [206 L.Ed.2d 583] (*Ramos*), defendant contends the jury should have been instructed it must unanimously agree as to the theory of first degree murder.

Overruling prior decisions holding otherwise, the United States Supreme Court held in *Ramos* that the Sixth Amendment's unanimity requirement applied to state criminal trials. (*Ramos, supra*, __U.S. at p. __ [206 L.Ed.2d at p. 591].)

Unanimous verdicts have always been required in California. (Cal. Const., art. I, § 16; *People v. Russo* (2001) 25 Cal.4th 1124, 1132 (*Russo*).) "Additionally, the jury must agree unanimously the defendant is guilty of a specific crime. [Citation.] Therefore, cases have long held that when the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the

---

[7] We also find defendant's claim that there is insufficient corroboration tying him to the kidnapping to be without merit. DNA ties defendant to the car Nguyen was transported in, cell phone records place Nguyen with defendant and Vang, and DNA on the cigarette butt at the location Nguyen's body was found place defendant where the kidnapping concluded and the murder occurred, which is part of a single plan with the kidnapping. This is sufficient corroboration.

[8] The instruction stated: "The defendant has been prosecuted for murder under two theories we have talked about: Malice aforethought and felony murder. Each theory of murder has different requirements, and I've instructed you on both. You may not find the defendant guilty of murder unless you all agree that the defendant committed murder under at least one of these theories. You do not all need to agree on the same theory, but you must unanimously agree whether the murder is in the first or second degree."

jury to agree on the same criminal act." (*Russo*, at p. 1132, italics omitted.)  In other words, "[a] unanimity instruction is required if there is evidence that more than one crime occurred, each of which could provide the basis for conviction under a single count." (*People v. Grimes* (2016) 1 Cal.5th 698, 727.)  "This requirement of unanimity as to the criminal act 'is intended to eliminate the danger that the defendant will be convicted even though there is no single offense which all the jurors agree the defendant committed.' " (*Russo*, at p. 1132.)

"But the unanimity instruction is not required ' "where multiple theories or acts may form the basis of a guilty verdict on one discrete criminal event." ' [Citation.] '[W]here the evidence shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed or what the defendant's precise role was, the jury need not unanimously agree on the basis or, as the cases often put it, the "theory" whereby the defendant is guilty.' [Citation.]  This is true even if the theories are based on different facts." (*People v. Grimes, supra*, 1 Cal.5th at p. 727; see *Russo, supra*, 25 Cal.4th at pp. 1132, 1135.)

The United States Supreme Court has held the same.  " '[D]ifferent jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line.  Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict.' " (*Schad v. Arizona* (1991) 501 U.S. 624, 631-632 [115 L.Ed.2d 555, 565]; see *id.* at p. 651 [115 L.Ed.2d at p. 577] (Scalia, J. concurring) ["Submitting killing in the course of a robbery and premeditated killing to the jury under a single charge is not some novel composite that can be subjected to the indignity of 'fundamental fairness' review.  It was the norm when this country was founded, was the norm when the Fourteenth Amendment was adopted in 1868, and remains the norm today"].)  *Schad* was not cited by the majority opinion in *Ramos*, although the dissent in *Ramos* notes that *Schad* recognized the Sixth Amendment right to a unanimous verdict did not apply to the states.  (See *Ramos, supra*, ___U.S. at p. ___

9

[206 L.Ed.2d at p. 626] (Gorsuch, J. dissenting); see *Schad*, at p. 634, fn. 5 [115 L.Ed.2d at p. 567, fn. 5].)  Likewise, the California Supreme Court has not overruled or disapproved *Russo*.  We are therefore bound to follow *Ramos* and *Schad* and must reject defendant's claim.[9]  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

## III

### *Felony-murder Instruction*

The trial court gave the jury the following special instruction on felony murder, which read in pertinent part:

"To prove that the defendant is guilty of first degree murder under this theory, the People must prove that:

"1.  The defendant did commit or attempted to commit the crime of kidnapping;

"2.  The defendant intended to commit the crime of kidnapping;

"AND ONE OF THE FOLLOWING:

"a.)  The defendant was the actual killer; OR

"b.)  The Defendant was not the actual killer, but with the intent to kill, aided, abetted, counseled, commended, induced, solicited, requested, or assisted the actual killer in the commission of the murder in the first degree; OR

"c.)  The defendant was a *major participant* in the underlying felony and acted with *reckless indifference to human life*."

After addressing the definition of major participant and reckless indifference, the instruction concluded:  "The defendant must have intended to commit the felony of Kidnapping before or at the time he caused death."

---

[9]  Since the instruction in question was given before *Ramos* was decided, any objection would have been futile, so defendant's claim is not forfeited by his failure to object. (*People v. Sandoval* (2007) 41 Cal.4th 825, 837, fn. 4.)

The court also instructed on the elements of the kidnapping special circumstance with CALCRIM No. 731 as follows in pertinent part:

"1. The defendant committed, or aided and abetted kidnapping;

"2. The defendant intended to commit, or intended to aid and abet the perpetrator in committing kidnapping;

"3. The defendant did an act that was a substantial factor in causing the death of another person;

"AND

"4. The defendant intended that the other person be killed."

A trial court must adequately instruct the jury on all elements of the law relevant to the case. (*People v. Miller* (1999) 69 Cal.App.4th 190, 207.) The instructions failed to include an element of felony murder that the killing take place during the perpetration of the underlying felony, here the kidnapping. (§ 189, subd. (a); *People v. Wilkins* (2013) 56 Cal.4th 333, 340.) Defendant and the Attorney General correctly point out that the omission of this element from the instructions was error. The question here is whether the error is prejudicial.

A trial court's failure to instruct on all elements of an offense is a constitutional error "subject to harmless error analysis under both the California and United States Constitutions." (*People v. Flood* (1998) 18 Cal.4th 470, 475.) Under the federal Constitution, the standard is whether the instructional error was harmless beyond a reasonable doubt under *Chapman v. State of California* (1967) 386 U.S. 18 [17 L.Ed.2d 705]. (*Flood*, at p. 504.) In resolving this issue, we consider the entirety of the instructions as a whole and counsel's closing arguments to determine whether "the factual question posed by the omitted instruction necessarily was resolved adversely to the defendant under other, properly given instructions." (*Id*. at p. 485; *People v. Cain* (1995) 10 Cal.4th 1, 35-37.) There is no prejudice under *Chapman* when "the omitted

11

element was uncontested and supported by overwhelming evidence." (*Neder v. United States* (1999) 527 U.S. 1, 17 [144 L.Ed.2d 35, 52].)

For the purposes of felony murder, " '[t]he homicide is committed in the perpetration of the felony if the killing and felony are parts of one continuous transaction.' " (*People v. Cavitt* (2004) 33 Cal.4th 187, 207.) As our analysis of defendant's section 654 claim will show, there is no question that the kidnapping and homicide were part of one transaction; Nguyen was abducted against his will, driven a considerable distance to a field, where he was released and killed by multiple gunshots to the head. Whether the homicide was discrete from the kidnapping was not at issue. Rather, what was at issue here was the credibility of the accomplice witnesses, in particular Bergsten-Amour's testimony naming defendant rather than her as the actual killer.

The jury resolved that question by finding Bergsten-Amour credible and convicting defendant on all charges and enhancement allegations. Furthermore, the prosecutor argued to the jury that felony murder required the jury to find that, "while committing the kidnapping, the defendant caused the death of another person." In light of this argument, the jury's implicit finding that Bergsten-Amour's account of the crimes was credible, and the lack of any argument or evidence that the killing and the kidnapping were discrete events, we find the instructional error was harmless beyond a reasonable doubt.

IV

*Prior Firearm Possession Evidence*

Defendant contends the trial court erred in admitting testimony from Bergsten-Amour and Saechao regarding defendant's prior possession of firearms.

A. *Background*

The defense filed a motion in limine seeking exclusion of any testimony from Bergsten-Amour and Saechao about defendant's prior weapons possession and violent

12

activities. At the hearing on the motion, the prosecutor stated the two would testify that in the two months leading up to the murder, both had seen defendant frequently carrying a gun, but did not describe the specific firearm he had. Bergsten-Amour described two firearms -- both handguns -- one black and one black and silver. Saechao would testify that she was worried when Nguyen said he was going to defendant's residence because she had seen defendant with a gun before but could not provide a specific time range. Defense counsel argued the evidence was inadmissible under Evidence Code sections 352 and 1101, subdivision (a).

The trial court ruled that Bergsten-Amour's testimony was admissible, as it was probative to defendant's recent access to and familiarity with firearms, was not the propensity evidence, and was not disqualified under Evidence Code section 352. The trial court wished to consider a supplemental brief on Saechao's testimony filed by the prosecution, so it deferred ruling on Saechao's testimony. At the next hearing, the defense requested the court defer ruling on Saechao, as counsel preferred to object during the trial. The trial court and prosecutor assented.

Saechao testified, without objection, that one and a half to two weeks before the killing, she saw defendant, who had two guns, try to sell a gun to Nguyen. Nguyen did not buy the gun. Bergsten-Amour and Vang were also there; neither of them had a firearm.

Bergsten-Amour testified that defendant normally carried a gun. She thought it was a .45-caliber, but told the detective it was a nine-millimeter. She did not know if defendant was armed when they were in Walmart, but he always carried a gun. The prosecution also played a tape of a police interview with Bergsten-Amour where she said that she saw guns in Vang's house every day and defendant always carried a nine-millimeter handgun on his person.

Xiong testified that she had never seen defendant with a gun before the night of the killing but admitted telling detectives that defendant always had a gun on him. She

13

clarified that she did not see defendant with a gun the morning after, and that both defendant and Vang had guns thenight Nguyen was put in the trunk. The prosecution referred to the firearm testimony in closing.

B. *Analysis*

"No evidence is admissible except relevant evidence." (Evid. Code, § 350.) " 'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) We review a trial court's evidentiary rulings under Evidence Code section 352 for abuse of discretion. (*People v. Doolin* (2009) 45 Cal.4th 390, 437.)

In a case addressing a murder committed with a firearm, the testimony of Saechao[10] and Bergsten-Amour tended to prove defendant had access to firearms, including a nine-millimeter handgun, the caliber of weapon used to kill Nguyen. It was therefore relevant to show defendant had the means to kill Nguyen with a firearm, and was not, as defendant characterizes it, improper propensity evidence. It is not necessary for the evidence to show defendant possessed the particular firearm used in the murder. So long as the firearm might be the murder weapon, the evidence is relevant. (See *People v. Carpenter* (1999) 21 Cal.4th 1016, 1052 [finding prior firearm possession testimony relevant where "this evidence did not merely show that defendant was a person

---

[10] We address Saechao's testimony on the merits notwithstanding defendant's failure to preserve the issue as to her testimony for appeal by not objecting to it at trial.

who possesses guns, but shows he possessed a gun that might have been the murder weapon"].) Such was the case here.

We also find it was not an abuse of discretion to decline excluding the evidence under Evidence Code section 352.

" 'Prejudice' as contemplated by [Evidence Code] section 352 is not so sweeping as to include any evidence the opponent finds inconvenient. Evidence is not prejudicial, as that term is used in a[n Evidence Code] section 352 context, merely because it undermines the opponent's position or shores up that of the proponent. The ability to do so is what makes evidence relevant. The code speaks in terms of undue prejudice. . . . ' "The 'prejudice' referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. In applying [Evidence Code] section 352, 'prejudicial' is not synonymous with 'damaging.' " [Citation.]' [Citation.]

"The prejudice that [Evidence Code] section 352 ' "is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence." [Citations.] "Rather, the statute uses the word in its etymological sense of 'prejudging' a person or cause on the basis of extraneous factors. [Citation.]" [Citation.]' . . . In other words, evidence should be excluded as unduly prejudicial when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction. In such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose." (*Vorse v. Sarasy* (1997) 53 Cal.App.4th 998, 1008-1009.)

Testimony that defendant possessed firearms before the murder was not prejudicial in the context of a case involving a murder committed by multiple gunshots to the head. While, as relevant evidence showing defendant had the means to commit the murder, it was damaging to his case, as relevant evidence offered by the prosecution will

15

likely be, it does not, when viewed in the context of the charged criminal acts, tend to invoke an emotional reaction causing the jurors to punish defendant as a result. Admitting the evidence was well within the court's discretion. Since the court properly admitted the evidence under the rules of evidence, defendant's due process claim fails as well. (*People v. Hovarter* (2008) 44 Cal.4th 983, 1010 [routine application of state evidentiary law does not implicate due process].)

V

*Continuance for Defense Witness*

Defendant contends it was a violation of his Sixth and Fourteenth Amendment rights to present a defense and to a fair trial for the trial court to deny his motion to continue the trial to secure a defense witness.

A. *Background*

Defense witness Courtni McCaffrey was scheduled to be in court at 8:30 a.m. on the day trial began but did not appear. The trial court noted she had an outstanding bench warrant stemming from her failure to appear in an unrelated Placer County criminal case. Defense counsel prepared a material witness order under section 1332, and the trial court appointed counsel for McCaffrey and agreed to deal with the material witness order. Defense counsel asked for a continuance to secure McCaffrey's attendance, and the prosecution objected.

Defense counsel told the court the defense investigator tried to contact her by phone, but the phone was not receiving calls. Defense counsel also noted that the prosecutor previously advised court and counsel that McCaffrey was a transient and argued defense efforts to find her constituted due diligence. The prosecutor added that

16

McCaffrey's probation officer said she had been arrested for shoplifting in Nevada County on May 24,[11] but the probation officer did not know where to find her.

Defense counsel expected McCaffrey to testify that while incarcerated with her, Bergsten-Amour told her she had minimized her involvement in the crimes to get lesser charges. Bergsten-Amour also discussed her codefendants and told McCaffrey that "she wanted to find someone to take them out."

The trial court denied the continuance and indicated it would issue a material witness bench warrant. At the close of the prosecution case on June 24, the parties reopened McCaffrey's status. Defense counsel noted a bench warrant for McCaffrey was issued. The trial court noted the defense presented three witnesses who testified about the differences between Bergsten-Amour's jail statements and her testimony, and the defense had decided to forego calling another jail witness, Sarah Simon. In addition, McCaffrey's location was still not known. The court concluded the evidence was cumulative and only marginally relevant, and there was no good cause to continue the case, as the defense had adequate time to try to find her.

B. *Analysis*

"Continuances shall be granted only upon a showing of good cause." (§ 1050, subd. (e).) To show good cause for a continuance to obtain a witness, a defendant must show " 'that he had exercised due diligence to secure the witness's attendance, that the witness's expected testimony was material and not cumulative, that the testimony could be obtained within a reasonable time, and that the facts to which the witness would testify could not otherwise be proven.' " (*People v. Howard* (1992) 1 Cal.4th 1132, 1171.)

"[T]he decision whether or not to grant a continuance of a matter rests within the sound discretion of the trial court. [Citations.] The party challenging a ruling on a

---

[11] This hearing took place on June 10.

17

continuance bears the burden of establishing an abuse of discretion, and an order denying a continuance is seldom successfully attacked. [Citation.]

"Under this state law standard, discretion is abused only when the court exceeds the bounds of reason, all circumstances being considered. [Citations.] Moreover, the denial of a continuance may be so arbitrary as to deny due process. [Citation.] However, not every denial of a request for more time can be said to violate due process, even if the party seeking the continuance thereby fails to offer evidence. [Citation.] Although 'a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality[,] . . . [t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process.' [Citation.] Instead, '[t]he answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.' " (*People v. Beames* (2007) 40 Cal.4th 907, 920-921.)

McCaffery's expected testimony that Bergsten-Amour admitted minimizing her role in the crimes to get a better deal had substantial overlap with other testimony where she admitted being the shooter. The testimony regarding the purported desire to have the other defendants assassinated is only marginally relevant to defendant's guilt or innocence. Even assuming the testimony was not cumulative and was material, there is no evidence that the defense could ever secure McCaffery, a transient already fleeing a prior bench warrant, let alone secure her in a reasonable time. It was not an abuse of discretion to deny the continuance. This routine application of state law governing the conduct of trials likewise does not implicate the Sixth Amendment right to present a defense or the due process right to a fair trial.

# VI

## *Section 654*

Defendant contends that imposing a consecutive term for the kidnapping offense violated section 654 and the prohibition against double jeopardy. The Attorney General agrees that the sentence contravened section 654. So do we.

Section 654, subdivision (a) provides in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." This statute "prohibits punishment for two crimes arising from a single, indivisible course of conduct." (*People v. Islas* (2012) 210 Cal.App.4th 116, 129.) "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor." (*Neal v. State of California* (1960) 55 Cal.2d 11, 19, disapproved on another ground in *People v. Correa* (2012) 54 Cal.4th 331, 334.) The question whether a defendant harbored a separate intent and objective for each offense is a factual determination for the trial court, and its conclusion will be sustained on appeal if supported by substantial evidence. (*People v. Osband* (1996) 13 Cal.4th 622, 730 (*Osband*).)

Relying on *Osband*, the trial court found section 654 did not prevent imposing a separate punishment for the kidnapping count there because substantial evidence supported first degree murder under both a premeditation and a felony-murder theory. In *Osband*, the Supreme Court found no double jeopardy issue for punishing a defendant for both the felony murder and the underlying felonies where substantial evidence supported liability under premeditation and felony-murder theories and it was unclear which theory the jury relied on. (*Osband, supra*, 13 Cal.4th at p. 731.) *Osband* also found no section 654 issue because the trial court implicitly determined that the defendant held more than one objective when he committed the underlying felonies, a finding supported by

19

substantial evidence.  (*Ibid.*)  Furthermore, the defendant's death sentence effectively mooted any risk of multiple punishment, as there can be no punishment in addition to death once that sentence was served.  (*Ibid.*)

This case is not like *Osband*.  The section 654 issue is not mooted by a death sentence, and more importantly, there is no evidence supporting separate objectives in committing the kidnapping and the murder.  Rather, Nguyen was kidnapped so defendant could murder him; the two crimes were inextricably intertwined as part of a single objective.  We shall modify the judgment to stay sentence on the kidnapping count.

DISPOSITION

The judgment is modified to stay sentence for kidnapping in count two.  As modified, the judgment is affirmed.  The trial court is directed to prepare an abstract of judgment reflecting the modified judgment, and to forward a certified copy to the Department of Corrections and Rehabilitation.


                                                \s\
                                           BLEASE, Acting P. J.


We concur:


\s\
ROBIE, J.


\s\
KRAUSE, J.

20